Consolidated Traction Co. *v.* South Orange and Maplewood Traction Co.

---

THE CONSOLIDATED TRACTION COMPANY

*v.*

THE SOUTH ORANGE AND MAPLEWOOD TRACTION COMPANY.

[Filed March 1st, 1898.]

1. One street car company cannot restrain another from crossing its tracks on the ground merely that the extension of defendant's street railroad on the proposed route is unauthorized by law.

2. A street railway company is not entitled to compensation for mere interruption of its road during the time another company is constructing a crossing over its tracks.

3. The question of complainant's right to compensation for the privilege of crossing its street car tracks will be determined on an application for a preliminary injunction to prevent its tracks being crossed by another company, where complainant was in actual use of the property, and all the facts relating to the existence of defendant's right to interfere were fully presented on the application.

4. A street railroad company operating the trolley system along a public street is not entitled to compensation for the construction of a crossing over

its tracks by another company duly authorized, where such crossing, when properly constructed, will not interfere with the exercise of its franchise, although it necessitates some actual interference with the tracks and wires as constructed, and changes complainant's exclusive use at the crossing.

5. Where the right to construct a crossing over the tracks of a street railway company exists, a court of equity will control its construction and operation on application of either party.

6. Where one has a right to construct a crossing over the tracks of a street railway company, he must give notice of the time and manner of its construction.

On bill, &c., and application for preliminary injunction.

*Mr. Joseph Coult* and *Mr. Halsey M. Barrett,* for the complainant.

*Mr. Alfred Skinner* and *Mr. Jay Ten Eyck,* for the defendant.

EMERY, V. C.

The complainant is a traction company operating street railways, organized under the Traction act of March 14th, 1893, and under this act entered upon and is operating the street railroad of the Orange and Newark Horse Car Railroad Company, as one of its lines. This street railroad is a double-track road running through Main street in the city of Orange, and, at the time of the entry on it by complainant, was operated by horses, but is now equipped and operated by the electric overhead trolley system.

The rights of the complainant to the occupation of the portion of Main street now in question for the purposes of its railroad, were first conferred on the Newark Passenger Company, a predecessor in title of the complainant, by a resolution of the common council of the city of Orange, passed August 25th, 1890, which authorized this company to construct, maintain, and operate their street railway for the transportation of passengers from the point on Main street where their line then ended, westerly to the city boundary line. A previous resolution of the common council of August 8th, 1890, gave the Newark

Passenger Company the right to use the overhead trolley system for propelling their cars.

. The defendant is also a. traction company organized under the .Traction act of 1893, incorporated November 8th, 1897, and on or about this date entered upon the street railroad of the South Orange and Maplewood Street Railway Company. This latter company was organized as a street railway company in 1894, and by its original articles its road was to be constructed entirely within the limits of the village of South Orange, and. was to run over private property, except where it crossed two. public avenues. The road was subsequently extended. beyond the village of South Orange and into the .township of West. Orange and into the city of Orange, up to the south side of Main street, where complainant's railway is now operated. This extension is alleged by complainant to have been made without authority of law. The extension of the road of the South Orange and Maplewood Street Railway is also built upon pri-. vate lands, except where it crosses the public highways, and for this crossing of the highways by the road as extended, the municipal authorities of the township have given authority. The extension of the road by the street railway company as far as the south side of Main street in Orange (according to the bill) was completed and the road in operation as long ago as the 7th of June, 1897, and on this date the street railway company applied to the city of Orange for permission to cross Main street, and the city council passed an ordinance on August 9th, 1897, granting this authority. On August 30th, 1897, a *certiorari* was granted by Mr. Justice Depue on the application of complainant, removing the ordinance to the supreme court, and by consent of the street railway company, which was a party defendant to the proceedings, the ordinance was afterwards set aside. One of the reasons assigned in the *certiorari* proceedings for setting aside the ordinance was that the street railway company had no authority to construct or operate a street railway beyond the limits of South Orange. After this ordinance had been set aside, the defendant, the South Orange and Maplewood Traction Company, was organized under the Traction act of

1893, and entered upon the railroad of the South Orange and Maplewood Street Railway Company as constructed and operated by the latter company. At the time of filing the certificate of entry required by the Traction act of 1893 (*P. L. of 1893 p. 306 § 5*), the road was constructed and in operation as far as the south side of Main street, and ever since its entry thereon, has been operated by the defendant from that point. On November 8th, 1897, the defendant, under the Traction act (section 6) filed a route for a proposed extension of its road from the terminus of the extension of the road on the south side of Main street, and across Main street, where complainant's tracks are laid. The Traction act (section 6) requires the consent of the municipal authorities to the location of the route of an extension by a traction company before the construction thereof, and the defendant on its application to the common council procured an ordinance, approved on December 21st, 1897, granting permission to construct, maintain and operate a double-track street railway across Main street. This ordinance did not provide for the location of the tracks and poles of the extension across Main street, but a resolution passed January 3d, 1898 (three days before the filing of the bill), provides for these locations. The defendant's railway is also operated by the overhead trolley system, and it now proposes to construct its system across the complainant's tracks, and claims the right to do so under this ordinance. Such construction cannot be made without to some extent interfering with the complainant's tracks during construction, and the continued operation of both roads at the point of crossing, in the method provided by the ordinance, will require the removal of the present rails of complainant, and the substitution at the crossing of rails especially constructed for crossings, and will also require the adoption of the overhead wire system now owned and used by complainant in such way that at the place of crossing a joint use for a short distance either of some portion of complainant's wire, or of defendant's wire, is necessary.

The complainant has given no consent to the construction of the crossing by defendant, nor has any offer of compensation

for damages to complainant, by reason of the construction, been made. Complainant's bill asks an injunction upon two grounds —*first*, that the defendant has no right to make its extension across the street, for the reason that the railroad of the street railroad company, upon whose road defendant entered, was not lawfully constructed beyond the limits of South Orange, and defendant's entry thereon under the Traction law, outside of that township, was unauthorized; *second*, that complainant's rights in its track and trolley system, operated in the public streets, are property rights which cannot be interfered with against their consent, without compensation. A preliminary injunction is now applied for.

Such preliminary injunction cannot be granted upon the first ground. The only ground upon which the complainant's right to equitable relief, based upon the illegal construction and operation of the defendant's railroad outside of the limits of South Orange, and up to the south side of Main street in the city of Orange, can be based, is the interference with the authorized business of the company, by competition carried on without authority of law. Such unauthorized competition with the business operated under a legal franchise, is a recognized ground of equitable as well as legal relief. *Raritan and Delaware Bay Railroad Co.* v. *Delaware and Raritan Canal Co., 3 C. E. Gr. 546 ; Pennsylvania Railroad Co.* v. *National Railway Co., 8 C. E. Gr. 441 ; Jersey City Gas. Co.* v. *Dwight, 2 Stew. Eq. 242.*

The only other legal injury which complainant can sustain by reason of an illegal extension of the defendant's road beyond the limits of South Orange and up to Main street, is an injury common to the public or to all other owners of property, and such common injury affords no basis for equitable interference on behalf of the individual or property-owner to enjoin the illegal exercise of a public franchise. In such cases, jurisdiction for the purpose of deciding upon such illegal use is to be exercised only upon proper proceedings at law or in equity by or on behalf of the state. But in order to obtain equitable relief upon the special ground of illegal interference with its business, the bill must be expressly based upon this right to

.the business, and the object of the bill must be to enjoin the illegal interference. And, if a preliminary injunction against such illegal interference is sought, the application therefor must also be made promptly. None of these conditions exist in the present case. The portion of the road charged to be operated without legal authority was in operation from the south side of Main street for about two months before the bill was filed, or perhaps (according to the bill) from June last. The sole express object of complainant's bill is the protection against the extension across Main street, and its property rights in Main street; nor does the bill either charge that the illegal extension south of Main street diverts its business, or ask any relief against this operation. It should also be stated that the defendant insists upon the legality of the extension of the street railway beyond South Orange, and also upon the legality of their operation of it, under the Traction Company act, and that a fair question exists as to whether, under the statutes relied on, the use of the road as extended by defendant is illegal. This *status* of the dispute as to the legality of defendant's structure, taken in connection with the delay in the application and the object of the bill as stated, will prevent the allowance of a preliminary injunction based on defendant's want of legal authority to operate its road from the south side of Main street.

*Second.* The principal ground upon which the right to a preliminary injunction is based, is that the construction of defendant's railroad across complainant's tracks, and its operation by the trolley system, will necessarily invade complainant's property rights, as owner of the track and trolley system, and interfere with its franchise of operating its road. The construction of the crossing as proposed will undoubtedly interfere to some extent with the operation of complainant's road during the construction. And if constructed in the manner disclosed by the affidavits, and by the plans produced at the hearing, it will also permanently change the present actual condition of complainant's property at the crossing in the following particulars: In lieu of its continuous unbroken rail, a rail of special construction, a cross in shape, called a frog, is laid down, the arms of

which are laid on the lines of the respective roads, and in such manner that when laid, the line upon each road is continuous, except that at the angle or very point of crossing, a groove or opening exists, sufficiently wide to admit the passage of the wheels of the cars which are to cross on the other line. This is the method now adopted as the best form of crossing for cars operated by trolley, and is the form of crossing adopted by steam and trolley cars in crossing, instead of leaving the line of the old road continuous, and breaking the rails of the new road. In the old form of crossing steam railroads by horse cars, there was no break in the railroad track, but the horse car wheels were pulled against and over the railroad tracks. When the tracks are actually constructed in the manner now proposed, there will be no interference with the operation of complainant's road, so that, so far as the tracks are concerned, the question of property rights is whether such change of the rail at the point of crossing can be made without consent or compensation. The operation of the trolley wires at the point of crossing will require a change, in the complainant's system, of more permanency. For when these are constructed in the manner now considered the best, and according to the plan proposed by defendant, there must be, at the place of crossing, a use for a short distance, by one road, of a trolley or feed wire supplied with electricity by the other road. The trolley feed wires of the two crossing systems are laid in the same plane, and, inasmuch as the electric current operating each line must be continuous, so far as possible, and in the direction of the line, the trolley or feed wire of one of the companies is cut at the proposed crossing in such manner as to interrupt it for the whole width of the crossing of both tracks—about thirty feet—and for this space the current is carried between the points of the cut wire by a loop wire extending upwards and running over the crossing. The wire of the other company is not cut, but its current is continued as before. This leaves a space of about thirty feet at the crossing, where the trolley wheel of the other company receives no current from its own wire or system, but must be taken from one end of its own wire (and of the loop) to the other end without its own

current, and, inasmuch as this loss of current for so great a distance would be unsafe, it has been provided against by the method of welding to the continuous wire of the company whose line is uncut, a cross wire extending to the ends of the other company's cut or loop wire, but not connected electrically with these ends; this connection being prevented by the insertion of what is called a circuit breaker. This cross wire, thirty feet in length, is supplied with a current from the wire of the continuous system. The general result, therefore, is that this cross wire between the points of the disconnected line is supplied with a current by one company, for the sole use of the other company, and in order that it may now have a practically continuous current over the actual crossing, which is the point of danger. Devices by switches, &c., for supplying electric currents to the cross wire from either system, may also be applied, but are not important or considered for the present purpose for the reason that the defendant is undoubtedly bound to construct its crossing with as little interference with complainant's structures as is reasonably practicable, and this principle would give complainant the right or option to have its own continuous wire left intact. This could, on the proposed method, be accomplished, however, only at the burden or expense of providing on the cross wire the electric current for the company whose wires are cut, and, in disposing of the case, I will therefore consider the right to compensation on this basis of alteration.

Another method of crossing is practicable, and is sometimes used, by which the wires of both companies are cut for a space of about nine inches at the crossing of each set of tracks (in this instance making four crossings), and a concave circular plate of this diameter or other device is inserted which holds all the wires, and over which the two currents are also passed by loops of wire joining the disconnected ends, and thus supplying a continuous current. But in this method the trolley wheel of each car "jumps" the nine-inch space covered by the plate without a current, and inasmuch as four of these would occur at the crossing, the method above referred to, of supplying a

continuous current, is now considered the best and safest, and is the one proposed to be adopted by defendant.

The defendant, in its answer, admits its liability to construct the crossing at its own expense, and offers to supply the current for the cross wire to be used by complainant if its wire is cut. In the affidavits, the president of the defendant states that the defendant is prepared to bear all the cost attendant upon or incident to said crossing, either in its construction or subsequent maintenance.

It is manifest, therefore, that the construction of the crossing, as proposed, will to some extent change the nature and character of the complainant's ownership of its tracks and wires laid and erected by it in a public street, and will create hereafter at the place of crossing, joint rights or interests of some character in the use of the tracks and wire system at this place. The question is whether this can be done against complainant's consent, without compensation. So far as relates to the mere interruption of the operation of complainant's road during the period of construction, there can be no basis for compensation, for complainant's right to the use of the street must be subject to the right of the public to cross its tracks located therein, and to the right of the public authorities to provide for crossing the tracks by any carriages or vehicles which have the right to use the street for travel, and to interrupt complainant's operation in such reasonable manner as may be necessary to provide for the construction of the crossing, when the right to cross exists. *National Docks, &c., Railroad Co.* v. *Pennsylvania Railroad Co., 9 Dick. Ch. Rep. 142 ; affirmed March Term, 1896.*

As to the permanent changes in complainant's tracks and wires, the precise question now involved has not been expressly adjudicated in our courts, nor has the right of the complainant for such taking or use of its property as is purely and necessarily incidental to the crossing of its tracks by street cars, moved either by horse or electric power, in the safest and most approved method, been expressly recognized ; and, on the other hand, the decisions of our courts thus far have recognized the right of street railway companies to cross the tracks of steam

railroads laid in the public street, without the consent of the latter and without compensation.

In *Morris and Essex Railroad Co.* v. *Newark Passenger Railroad Co., 6 Dick. Ch. Rep. 379 (1892)*, Chancellor McGill refused to enjoin a trolley company from crossing a steam railroad laid where the latter crossed a public highway, and from erecting its poles and wires over the complainant's road. The decision was affirmed by the court of errors and appeals for the reasons given by the chancellor. *7 Dick. Ch. Rep. 340 (1894)*. In *West Jersey Railroad Co.* v. *Camden, &c., Railway Co., 7 Dick. Ch. Rep. 31 (1893)*, Chancellor McGill likewise refused to enjoin a trolley company from crossing the tracks of a steam railroad company laid in a public street. In both of these cases the decisions, so far as they were made on the merits of the case, involved the denial of any right to compensation to the railroad company, unless it be considered that being applications for preliminary injunctions, the denials of such injunctions were correct because the right to compensation was doubtful, and therefore could not be protected by preliminary injunction. From the report of the *Morris and Essex Railroad Case* on appeal, in *17 N. J. L. J. 242*, it would seem that this was the ground relied on ; but in the official report (*7 Dick. Ch. Rep. 340*) all the reasons given in the court below are approved. This principle of refusing preliminary injunction if the complainant's right be doubtful, if now applied, would require, I think, the denial of the preliminary injunction in the present case. The recent decision of the supreme court in a late case, *Paterson Railroad Co.* v. *Newark, 32 Vr. 80 (November, 1897)*, is relied on by complainant's counsel as settling the legal right to compensation in this case, but I do not so read the decision. In that case a public street was laid out over a railroad operated at this point on the company's own land, for which land, and damages for the use of it as a street, the railroad company was, under the law relating to the opening of streets, entitled to compensation. The question was whether the expenses of a flagman and of gates at the new crossing were proper elements of damages for the opening of the street, and

it was held that they were. The right to any compensation whatever in the case was based on the taking of land belonging absolutely to the company, as a private owner, and for which it had paid; and the company being therefore entitled by the express provisions of the statute to damages for the taking of its land, the question was as to the elements properly included. This case is no authority for the present application of complainant, which depends upon its right to compensation for tracks and other structures erected not on its lands but in a public street.

The *Coach Company Case, 6 Stew. Eq 267 (1880)*, is also relied on as establishing the nature of the complainant's ownership of its tracks and wires, and inferentially the right to compensation for any interference whatever therewith. But that case related to the habitual wrongful use of the railway company's tracks for the purpose of passage along the same, and did not touch upon or settle the question of necessary interference for the purpose of legitimate public travel across the track. Nor was the *Coach Company Case* considered in the later decisions above referred to as settling the rights at crossings. In these decisions (*Morris and Essex Railroad Company* and *West Jersey Railroad Company Cases*) the respective right of the electric street car and steam railroad companies at crossings in the public streets were fully treated on the merits of the question, and principles were laid down which, as it seems to me, when read in connection with our previous decisions, govern the question of the right of complainant to compensation for crossing its tracks laid in a public street. And, in view of the fact that the right to compensation, if it exists in this case, is a constitutional right to compensation *previous to taking,* which can be fully protected and enforced only by the prevention of the taking of complainant's property, I am inclined to think that where the complainant is in actual possession and constant use of the property proposed to be taken or interfered with by the defendant, under claim of statutory authority, and all the facts relating to the existence of the right of the defendant to thus take or interfere with the property in complainant's actual possession and use,

Consolidated Traction Co. *v.* South Orange and Maplewood Traction Co.

are fully presented on application for preliminary injunction, leaving no substantial dispute as to the facts which should be settled by a final hearing, and no other special reason appears in the case for delaying the decision of the legal question arising on the facts until final hearing, then this court should decide the legal question of the right to compensation on application for preliminary injunction. Such cases would seem to come within the class referred to in *Hart* v. *Leonard, 15 Stew. Eq. 416, 419 (Errors and Appeals, 1886)*, as cases where one at-tempts to appropriate the land of another, under color of statu-tory authority, without complying with the legal conditions precedent. In the cases there cited as belonging to this class, the right to compensation was affirmed and protected by pre-liminary injunction. See, also, *Township of Franklin* v. *Nutley Water Co., 8 Dick. Ch. Rep. 601,* and cases cited on page 606, as to the use of preliminary injunctions for the protection of constitutional or statutory rights requiring previous consent of complainants previous to interference with their property or right of control. These cases, as to the decision upon prelimi-nary injunctions, differ from the cases where the complainant is not in the actual possession and use of the property proposed to be taken, and where complainant's own right to the legal possession free of defendant's right to take without compen-sation, was the doubtful right asserted. Such cases of doubtful right in complainant not in actual possession were *Hinchman* v. *Paterson Railroad Co., 2 C. E. Gr. 75 (Chancellor Green, 1864)*, and *Halsey* v. *Rapid Transit Co., 2 Dick. Ch. Rep. 380 (Vice-Chancellor Van Fleet, 1890)*. And although in both of these cases, protection of complainant's doubtful right by pre-liminary injunction was denied, yet it should be noticed that complainant's right to compensation was in both cases fully ex-amined on its merits and decided adversely to complainants, and both cases have been since accepted as settling the import-ant questions of right involved, viz., that additional burdens in the public easement on streets are not created by the use of street cars operated by horses or trolley.

In the present case, all the facts relating to the manner of

crossing, upon which the right to compensation must depend, are as fully presented as they would be on final hearing, the property of complainant in constant use by. it is proposed to be actually interfered with, and there would seem to be no sufficient reason why the question of the right to compensation should not be now considered, and that right be protected, if it be held to exist. Considering the question, therefore, upon its merits, I shall apply the principles relating to it which seem to me to be settled by our decisions above referred to, especially in the *Hinchman Case*, the *Halsey Case*, the *Morris and Essex Railroad Case*, and the *West Jersey Railroad Case, supra*. These cases settle that electric street railways, operated by the overhead trolley system with its poles and wires, are not additional burdens upon the soil of the highway, and that these structures may be placed in the public streets without compensation to the owner of the soil, subject to the public easement of passage, and other ordinary uses of a highway. They also settle that a steam railroad, lawfully constructed across a public street cannot exclude the public from the right to use the highway at the point of crossing, or from crossing their tracks by street cars operated by either horses or trolley, except to the extent that interference may be necessary to permit the lawful operation of the steam railroad at the point of crossing. These principles, as it seems to me, control the right of trolley companies, whose tracks are laid longitudinally in the public street, to prevent the crossing of their tracks. They can only prevent this crossing so far as the crossing interferes with or prevents the operation of their road or the exercise of their franchises. Their tracks occupy the streets longitudinally, without compensation to the abutting owner, only upon the theory that they provide a method of passage over the street which does not interfere with the ordinary use of the streets for public travel, and that their construction or operation in their ordinary mode does not exclude or prevent reasonable crossing of its tracks by the public. And the right of the legislature or of a municipality under its authority to provide for crossing of tracks already laid down, by other tracks operated in the same manner, seems to rest upon the same foun-

dation as the original right of the complainant to construct its own tracks in the public streets, and operate by overhead trolley, without compensation. The right of one street railway to cross another street railway already constructed, is the same legitimate use of the highway as the construction and operation of the original road, and the original right to construct and operate a road in the public streets is necessarily subject to all legitimate purposes of crossing. This would include the methods of crossing made necessary by the development of legitimate methods of using the streets for travel. Nor does the fact that the crossing, as at present proposed, necessitates some actual interference with the tracks and wires as constructed, and to some extent changes thereafter the exclusive use by complainant at the crossing, prevent the crossing by a similar railway company without compensation, if made under the proper legislative authority. For these changes are the necessary result of the development of the method of operating electric roads at their points of crossing, and are such as are made necessary as the best and safest methods now attainable for the safety and convenience of the public in the operation of both roads at the point of crossing. They are, therefore, changes and burdens in the use of its tracks and trolley system, to which the original right to lay and construct them was necessarily subject, and, in a legal point of view, are different only in degree, and not in character, from the changes in the property and control of its tracks made in the ordinary horse car crossing. By reason of the operation of both railroads by electricity supplied by overhead wires, the actual joint use at the point of crossing, which was, with the horse railways, confined· to a short space on the tracks and surface of the ground, is now extended to a more complicated system of tracks on the surface, and also of wires overhead. But it is still, in the whole extent of the crossing appliances, and in every part thereof, merely a crossing in the safest and best-manner by two street railroad companies, each of which has the right to use electricity at the place of crossing, with the proper tracks and wire system for that purpose. The use of the whole system, although a complicated use, is still, in its essential nature,

only a joint use of the public highway at the point of crossing for *the sole purpose of crossing,* and, inasmuch as the complainant's tracks and wires were originally laid and constructed subject to the right of the proper authorities to disturb them for the purpose of legitimate public travel in the public street across their tracks, and the changes and disturbances are necessarily incident to such crossing, these are not, in my judgment, the subject of compensation. If the complainant is to be compensated for the changes in its property to which it is subjected, solely by the necessity of providing for legitimate public travel across its tracks, and can prevent such travel on the streets from crossing its tracks until compensation for the changes in its property and damages (whatever they may be) arising solely from the necessary provisions for such travel, then a situation arises in which it may perhaps be necessary to consider whether the structures which complainant has erected in the street have not now become such as interfere with and obstruct public travel at the point of crossing, and for such exclusive benefit of the complainant that they go beyond its right of occupation of the street, and whether the company, on its part, has not become subject to claims for compensation based on the imposition of an additional burden on highways at the point of crossing, for its exclusive use. The only basis for the existence or continuance of complainant's structures in the street, without compensation, is that they do not substantially interfere with the ordinary and proper use of the highway for public travel, and so long as the structures it erects are kept within its limit, no right to compensation would arise, but if the structures it now erects do interfere with legitimate public travel across its tracks, by methods of travel which are legitimate on the other portion of the public street, then, as it seems to me, the complainant has erected and is operating a system which is no longer a mere instrument for public travel over the highway, subject to the right of the public to cross it in any legitimate manner, but has, by its structures, interfered with and obstructed a certain portion of the legitimate travel across its tracks. And if these structures of complainant cannot be safely or reasonably crossed by such legitimate travel,

without compensation, then the operation of them goes beyond the original limitation of complainant's right to occupy the streets for travel in common with the public, and as to the legitimate travel in crossing, complainant's structures are not entitled to be protected by injunction for the purpose of securing compensation.

I reach the conclusion, therefore, on the merits of the question, that the complainant is not entitled to compensation for damages to its property by the proper construction of this crossing, and as the crossing, when properly erected, will not interfere with the exercise of its franchises, the application for preliminary injunction on this ground of right to compensation is refused.

This conclusion agrees with the principles settled by the decisions of the courts of other states, in cases involving the rights of crossing in public streets, so far as I have been referred to them. These are cases of street car tracks crossing steam railroads, and deny this right to compensation. *Brooklyn Central, &c., Co.* v. *Brooklyn City Railroad Co., 33 Barb. 420 (1861)*; *Chicago, &c., Railway Co.* v. *West Chicago Shore Railway Co., 156 Ill. 255 (1895)*; *Philadelphia, Wilmington and Baltimore Railroad Co.* v. *Wilmington City Railway Co., 38 Atl. Rep. 1067 (Delaware, 1897)*; *Pennsylvania Railroad Co.* v. *Greensburgh, &c., Street Railway Co., 176 Pa. St. 559; New York, &c., Railroad Co.* v. *Bridgeport Traction Co., 65 Conn. 410.*

It was suggested, in the brief of complainant's counsel, that a court of equity has jurisdiction to control the construction of this crossing if the parties cannot agree. Such jurisdiction can, undoubtedly, be exercised, and where the right to construct a crossing exists, a court of equity will, if necessary, and on application of either party, interfere to control the construction. This was the course taken in this court where the right to construct a crossing arose after condemnation proceedings, and the jurisdiction for the purpose of finally deciding upon the character of the crossing was affirmed by the court of errors and appeals. *National Docks, &c., Railway Co.* v. *Pennsylvania Railroad Co.,*

*9 Dick. Ch. Rep. 142; affirmed, Pennsylvania Railroad Co. et al. v. National Docks, &c., Railway Co., 10 Dick. Ch. Rep. 820.* And such equitable jurisdiction relating to the joint use of the public highway would probably extend to the settlement of all questions relating to the construction, operation and maintenance of the crossing, in case the parties did not agree. But the bill in the present case is not based on the right to equitable interference for the purpose of constructing the crossing properly, either as to time or manner, but to prevent its construction at all in any manner, without compensation. Nor has the argument on this application been addressed to the question of controlling the joint use, and I am not satisfied that an interference by this court is yet necessary for this purpose. The defendant, of course, has no right arbitrarily to select its own time or manner of erecting the crossing, but, as it now strikes me, is bound, if no agreement is made, to give due notice, both of the time and manner in which the crossing is proposed to be made. This was the course pursued in the *National Docks Case.* The rights and obligations arising upon the notice are matters which are not now before the court. The present application is denied.