# WHEELING AND BELMONT BRIDGE COMPANY *v.* WHEELING BRIDGE COMPANY.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 1425. Submitted December 15, 1890. — Decided February 2, 1891.

When the highest court of a State holds a judgment of an inferior court of that State to be final, this court can hardly consider it in any other light in exercising its appellate jurisdiction.

A ferry connecting Wheeling with Wheeling Island was licensed at an early day in Virginia. Subsequently a general law of that State prohibited

the courts of the different counties from licensing a ferry within a half a mile in a direct line from an established ferry. In 1847 the defendant purchased the ferry and its rights. *Held*,

(1) That the general law of Virginia had in it nothing in the nature of a contract;

(2) That the transfer of the existing rights from the vendor to the vendee added nothing to them.

An alleged surrender or suspension of a power of government respecting any matter of public concern must be shown by clear and unequivocal language; it cannot be inferred from any inhibitions upon particular officers, or special tribunals, or from any doubtful or uncertain expressions.

THIS was a motion to dismiss or affirm. The case was thus stated by the court.

This was a proceeding commenced by petition in a court of West Virginia by the Wheeling Bridge Company, a corporation under the laws of that State, to condemn for its use a parcel of ground owned by the Wheeling and Belmont Bridge Company, a corporation formed under the laws of Virginia, of which the territory composing West Virginia was then a part. The petitioner represented that it was created a corporation for the purpose of constructing and maintaining a bridge across the Ohio River, from a point on the east side of its main channel, north of the public landing in the city of Wheeling, to a point nearly opposite on Wheeling Island in that city — the bridge to be for public use; and that in order to construct it and its approaches it was necessary to build over and to take a parcel of land belonging to the Wheeling and Belmont Bridge Company on Wheeling Island, which parcel was described in the petition and designated on an accompanying plat, and contained about thirty perches.

The petitioner averred that there was no lien or charge upon the parcel of land; that it was unable to agree with the Wheeling and Belmont Bridge Company on the terms of purchase; and that the land was necessary for the construction of the proposed bridge and the approaches to it. It therefore prayed that notice might be given to the Wheeling and Belmont Bridge Company of the filing of the application, and

that the same would be heard on a day designated; that commissioners be appointed by the court to ascertain what would be a just compensation for the land; and that upon the payment of the compensation thus ascertained the title might be vested in the petitioner.

To this petition the Wheeling and Belmont Bridge Company appeared and tendered seven pleas; in the first four of which the defendant joined issue, raising the question of the necessity of the parcel of land desired for the purpose of maintaining the proposed bridge of the petitioner and its approaches, and of the necessity of the parcel and certain structures thereon for the proper exercise by the defendant of its franchise. The issues were found in favor of the petitioner by a jury, establishing the fact that the land desired was essential to the proposed work of the petitioner and was not essential to the proper exercise of the franchise of the defendant. No questions were raised as to the correctness of the rulings upon the trial of these issues, at least none which can be considered by this court.

The other three pleas raised the question of the power of the legislature to authorize the construction of a new bridge within half a mile either way from the bridge of the defendant, to transport persons and property across the Ohio River, the defendant contending that, by its charter and the privileges of owners of ferries which it had acquired, it had become invested with the exclusive right to thus transport persons and property within that distance of its bridge. The court held the pleas insufficient, and rejected them, and rendered judgment sustaining the proceedings for the condemnation of the property, adjudging that it was necessary for the petitioner to take it for the purpose of prosecuting its proposed work, and was not necessary to the defendant for the exercise of its franchise. The court thereupon named commissioners to ascertain what would be just compensation for the land. A writ of error was subsequently allowed, the proceedings of the commissioners stayed, and the case taken to the Supreme Court, where the judgment of the lower court was affirmed. To review this latter judgment the case was brought here.

*Mr. W. P. Hubbard* for the motion.

*Mr. Daniel Lamb, Mr. A. J. Clarke* and *Mr. Henry M. Russell* opposing.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The defendant in error, the plaintiff below, moves in the alternative to dismiss the appeal on the ground that the judgment recovered is not final, or to affirm the judgment on the ground of the manifest insufficiency of the errors assigned. The essential points of contention in the case related to the necessity of the property for the purpose of the petitioner, and to its necessity to the defendant for the proper exercise of its franchise. The judgment for the condemnation was conclusive upon both particulars. A right to condemn, as held by the Supreme Court of the State, is to be determined before the appointment of commissioners to estimate the amount of compensation to be made. *Baltimore & Ohio Railroad* v. *Pittsburgh, Wheeling &c. Railroad,* 17 West Va. 812. If the judgment had been different, all further proceedings would have been ended. Being for the condemnation, the estimate of the compensation, which was to follow, was to be made by commissioners, to be appointed, and might therefore be treated as being a distinct proceeding. The judgment appears to have been considered by that court as so far final as to justify an appeal from it; and if the Supreme Court of a State holds a judgment of an inferior court of the State to be final, we can hardly consider it in any other light, in exercising our appellate jurisdiction. The motion to dismiss must, therefore, be denied. But upon the motion to affirm, other considerations arise upon the 5th, 6th and 7th special pleas, which were held insufficient and rejected.

The fifth special plea sets forth, in substance, that the defendant was organized under a charter from the State of Virginia to erect a bridge across the Ohio River at or near the town of Wheeling; that in pursuance of the charter it erected and has for many years maintained for public use,

in consideration of tolls lawfully exacted, a wire suspension bridge extending from the eastern shore of the river at Tenth Street in the city of Wheeling to the eastern shore of Zane's or Wheeling Island; that it was empowered by the legislature to purchase, acquire and hold all ferry rights and privileges between Zane's Island and the main Virginia shore at the city of Wheeling; that in the year 1847 there was, and for many years had been, between those points, a ferry maintained and owned by certain parties named, together with the rights and privileges by law incident thereto; that in September, 1847, it acquired by purchase from them the said ferry and the rights and privileges thereof, and has since owned and enjoyed the same; that its present toll bridge was erected and has been maintained substantially in the location of the ferry, and by the use of the bridge for the public it has kept in full force and vigor the rights and privileges appertaining to the ferry. The plea also sets forth that at the time when the defendant acquired the ferry and the rights and privileges incident thereto, one of them was the exclusive right to transport persons, animals and vehicles across the Ohio River within the limits of one-half a mile from the ferry; and that the bridge proposed to be built by the petitioner is to be located, and the whole parcel of land proposed to be condemned is situated, within half a mile of the said ferry and of the defendant's bridge.

The sixth special plea embodies substantially the averments of the fifth, with an additional one to the effect that out of the powers and authorities granted to the defendant and the acquisition by it of the said ferry and the rights, privileges and franchises thereof, a contract arose between the State of Virginia and the defendant, that it should have and enjoy during its chartered existence, the exclusive privilege of transporting persons, animals and vehicles across the Ohio River at all points within half a mile of the location of the ferry; that upon the formation of the State of West Virginia it became a party to the contract and is bound by it, but that the legislature of the State, not regarding its obligations, in March, 1882, passed an act providing that corporations might be formed,

for the purpose of erecting and maintaining toll bridges over the Ohio River for the transportation of persons, vehicles and other things, and that no ferry privileges or franchises should preclude the erection of such bridges, or entitle the owner to damages by reason thereof. The defendant avers that this act of the legislature of West Virginia is unconstitutional and void, as impairing the obligation of the contract between West Virginia and Virginia and the defendant. The seventh special plea adds nothing material to the averments of the other two.

The contention of the defendant is, that by the acquisition of the ferry and its privileges, and the authority to construct its bridge, it has the exclusive right to transport passengers, animals and vehicles over the Ohio River at all points within half a mile of the bridge. The ferry which it purchased — the one connecting the main land with Wheeling Island — was licensed at an early day, and no exclusive privileges, such as are claimed now, were then attached to the franchise. The subsequent general law of Virginia, passed in 1840, prohibiting the courts of the different counties from licensing a ferry within half a mile in a direct line from an established ferry, had in it nothing of the nature of a contract. It was a gratuitous proceeding on the part of the legislature, by which a certain benefit was conferred upon existing ferries, but not accompanied by any conditions that made the act take the character of a contract. It was a matter of ordinary legislation, subject to be repealed at any time when, in the judgment of the legislature, the public interest should require the repeal. The mere purchase by the defendant of existing rights and privileges added nothing to them. It would be absurd to suppose that the transfer from vendor to vendee gave them any additional force or validity. Here the prohibition of the act of 1840 was only upon the county courts, and that in no way affected the legislative power of the State. *Fanning* v. *Gregoire*, 16 How. 524. Nor did the charter of the defendant contain any inhibition upon the State to authorize the establishment of another bridge within the distance claimed whenever the public interest should require it. An alleged surren-

der or suspension of a power of government respecting any matter of public concern must be shown by clear and unequivocal language; it cannot be inferred from any inhibitions upon particular officers, or special tribunals, or from any doubtful or uncertain expressions. As was said substantially in the case of *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420, 548, whenever it is alleged that a State has surrendered or suspended its power of improvement and public accommodation on an important line of travel, along which a great number of persons must daily pass, the community has a right to insist that its surrender or suspension shall not be admitted, in a case in which the deliberate purpose of the State to make such surrender or suspension does not appear; referring to several adjudications of this court in support of the doctrine. And whatever of exclusiveness there was in the privilege extended by the act of 1840 within half a mile on each side of an established ferry, was repealed in 1882. From that time the defendant could claim no exclusive privilege to transport passengers, animals and vehicles over the Ohio River within the distance mentioned under the repealed statute, even if it could have done so before.

*Judgment affirmed.*