# WILLIAMS *v.* WINGO.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 222. Argued April 11, 12, 1900. — Decided May 14, 1900.

The act of the legislature of Virginia of March 5, 1840, providing that " it shall not be lawful for the court of any county to grant leave to establish a ferry over any watercourse within one half mile, in a direct line, of any other ferry legally established over the same watercourse," was one of general legislation, and subject to repeal by the general assembly, and did not tie the hands of the legislature, or prevent it from authorizing another ferry within a half mile whenever in its judgment it saw fit.

BY the statutes of Virginia authority was given to the county courts of the several counties to license ferries. By an act passed March 5, 1840, (Acts Assembly, 1839–1840, p. 58, c. 72,) carried, with simply verbal changes, into chap. 64 of the Code of Virginia of 1873 as sec. 23, and subsequently into chap. 62 of the Code of 1887 as sec. 1386, it was provided :

" Be it enacted by the General Assembly, That it shall not be lawful for the court of any county to grant leave to establish a ferry over any watercourse within one half mile, in a direct line, of any other ferry legally established over the same watercourse."

In 1880 the county court of Giles County gave to the plaintiff in error a license to maintain a ferry across New River. On March 5, 1894, the general assembly of Virginia passed the following act (Acts Assembly, 1893–1894, p. 789, c. 692):

" Be it enacted by the General Assembly of Virginia, That it shall be lawful for the county court of Giles County to establish a ferry at a point on New River, in said county, at a point around Egglestons Springs depot and between Egglestons Springs and Egglestons depot, on the New River branch of the Norfolk and Western Railroad, Giles County, Virginia. Said court in establishing said ferry shall be bound by sections thirteen hundred and seventy-five, thirteen hundred and seventy-six, thirteen hun-

dred and seventy-seven, thirteen hundred and seventy-eight, thirteen hundred and seventy-nine, thirteen hundred and eighty, thirteen hundred and eighty-one, thirteen hundred and eighty-two, thirteen hundred and eighty-three, thirteen hundred and eighty-four and thirteen hundred and eighty-five of the Code of Virginia; but section thirteen hundred and eighty-six of said code, so far as the distance of one half a mile is concerned, shall not apply to the establishment of said ferry at said place."

Under this act a license was given to the defendant in error to establish a ferry within less than half a mile of the ferry established by the plaintiff in error under his prior license. The rightfulness of this action was sustained by the circuit court of Giles County, and subsequently by the Supreme Court of Appeals of the State of Virginia, and to review such decision this writ of error was brought.

*Mr. W. J. Henson* for plaintiff in error.

*Mr. Samuel W. Williams* for defendant in error.

Mr. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The contention of the plaintiff in error is that, under the laws of the State of Virginia in force at the time of such action, the license granted by the county court to him to establish a ferry created a contract between him and the State to the effect that no other ferry should be established within half a mile; and that the act of 1894 and the subsequent proceedings of the county court of Giles County impaired the obligation of that contract, and, therefore, were repugnant to section 10 of article 1 of the Constitution of the United States.

This is an obvious error. The act of 1840 was one of general legislation, and subject to repeal by the general assembly. No rights could be created under that statute beyond its terms, and by it no restraint was placed upon legislative action. When the general assembly gave to the county courts power to license ferries it by that act in effect forbade them to establish a second

ferry within half a mile of one already established, but that bound only the county court. It did not tie the hands of the legislature, or prevent it from authorizing another ferry within a half mile whenever in its judgment it saw fit. A contract binding the State is only created by clear language, and is not to be extended by implication beyond the terms of the statute. *Fanning* v. *Gregoire*, 16 How. 524, is in point and decisive. In that case the plaintiff was by an act of the Iowa territorial legislature given authority to establish a ferry across the Mississippi River at the then town of Dubuque, and the act also provided that no court or board of county commissioners should authorize any other person to keep a ferry within the limits of the town. The city of Dubuque was thereafter incorporated, and under its general corporate powers entered into a contract with the defendant to run a steam ferryboat across the river. The plaintiff thereupon filed a bill to restrain the defendant from so doing. It was held that the bill could not be maintained, this court saying (pp. 533, 534):

"Although the county court and county commissioners were prohibited from granting another license to Dubuque, yet this prohibition did not apply to the legislature; and as it had the power to authorize another ferry, the general authority to the council to 'license and establish ferries across the Mississippi River at the city,' enabled the corporation, in the exercise of its discretion, to grant a license, as the legislature might have done. . . . The restriction on the commissioners of the county does not apply, in terms, to the city council; and the court think it cannot be made to apply by implication."

This case was cited with approval in *Belmont Bridge Wheeling Bridge*, 138 U. S. 287, in which this very statute of Virginia of 1840 was under consideration, and it was said (p. 292):

"Here the prohibition of the act of 1840 was only upon the county courts, and that in no way affected the legislative power of the State."

The case of *The Binghamton Bridge*, 3 Wall. 51, is not inconsistent. There an act of the legislature, authorizing the one bridge, contained a proviso " that it should not be lawful for

any person or persons to erect a bridge within a distance of two miles." That provision was held a part of the contract between the State and the bridge company, Mr. Justice Davis, speaking for a majority of the court, saying (p. 81):

"As there was no necessity of laying a restraint on unauthorized persons, it is clear that such a restraint was not within the meaning of the legislature. The restraint was on the legislature itself. The plain reading of the provision, 'that it shall not be lawful for any person or persons to erect a bridge within a distance of two miles,' is, that the legislature *will not make it lawful* by licensing any person or association of persons to do it."

In the case at bar the only effect of the act of 1840, while in force, was, as we have said, to tie the hands of the county court. It operated in no manner as a restraint upon the legislature or as a contract upon its part that the State would not act whenever in its judgment it perceived the necessity for an additional ferry. The fact that in this case the special authority was given to the county court is immaterial. A general act forbidding county courts to license additional ferries is not infringed by a subsequent act giving special right to a single county court to establish a particular ferry. No promise made by the legislature by the first act is broken by the second. The judgment of the Supreme Court of Appeals of Virginia was correct, and it is

*Affirmed.*