UNITED RAILROADS OF SAN FRANCISCO v. CITY AND COUNTY OF SAN FRANCISCO et al.

(District Court, N. D. California, Second Division. January 18, 1917.)

No. 280.

1. STREET RAILROADS ☞29—FRANCHISE—STRICT CONSTRUCTION—EXCLUSIVE FRANCHISE.

A franchise given to a street railroad company, which does not expressly grant an exclusive right to operate on the streets named, nor exclude the city from establishing a street railroad of its own, will not be construed to give an exclusive right as against the city, since statutory grants by way of franchise or property in which the government or public has an interest must be strictly construed in favor of the public, and whatever is not unequivocally granted is withheld.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 46.]

2. CONSTITUTIONAL LAW ☞134—CONSTRUCTION—STATUTE.

Civ. Code Cal. § 499, which, as it existed in 1879, when a street railroad franchise, authorizing the city to grant to one other corporation the right to use the streets upon the terms stated in that section, was granted, provided that two street railroad corporations might be permitted to use the same tracks, each paying an equal portion for the construction thereof, but in no case must two railroad corporations occupy and use the same street or track for a distance of more than four blocks, must be read as a whole, not separated into two parts, and, so read the restriction in the second clause is not a prohibition against the use of the street by two railroad corporations, but a restriction on the power to grant permission for such use, which may be repealed by the Legislature.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 344.]

3. MUNICIPAL CORPORATIONS ☞682(2)—POLICE POWER—STREET RAILROAD—FRANCHISE—MUNICIPAL LINE.

While a city cannot exercise its police power to destroy the franchise of a street railroad corporation, or exercise it arbitrarily, that power cannot be so limited as to prevent the city from constructing a street railroad of its own on the same streets, when that is made necessary by changing conditions.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1468.]

4. MUNICIPAL CORPORATIONS ☞321(2)—MUNICIPAL STREET RAILROAD—NECESSITY—DETERMINATION.

The necessity for the construction of a municipal street railroad along a street occupied by tracks of a private corporation is a legislative rather than a judicial question, where there is no showing of the exercise of an arbitrary power by the city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 838.]

5. EMINENT DOMAIN ☞75—NECESSITY FOR COMPENSATION—STREET RAILROAD CROSSINGS.

In the absence of a statute prohibiting one street railroad from crossing the tracks of another, it is not necessary that compensation be first paid by a city before laying its municipal street railroad, and Civ. Code Cal. § 469, providing that if the owners of railroads cannot agree as to the compensation to be made for cutting and adjusting the rails at a crossing, the condemnation of the right of way over the one for the use of the other may be had in appropriate proceedings, and section 500, providing that any proposed railroad track may cross any track already constructed, do not require such compensation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 198, 199.]

6. EMINENT DOMAIN ☞86—"TAKING" PROPERTY—STREET RAILROAD—COMPETING MUNICIPAL ROAD.

The construction by a city of a municipal street railroad along the streets already occupied by a private street railroad is not a "taking" or damaging of the private corporation's property, contrary to the United States Constitution or the Constitution of California.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 231.

For other definitions, see Words and Phrases, First and Second Series, Taking.]

In Equity.   Suit by the United Railroads of San Francisco, a corporation, against the City and County of San Francisco, a municipal corporation, and others for an injunction.  On final hearing.  Injunction denied, and decree rendered for respondents.

Garret W. McEnerney, Wm. M. Abbott, and Wm. M. Cannon, all of San Francisco, Cal., for complainant.

Percy V. Long, City Atty., of San Francisco, Cal. (Thos. E. Haven and George Lull, both of San Francisco, Cal., of counsel), for respondents.

HUNT, Circuit Judge.   The United Railroads of San Francisco, a public service corporation operating street railway lines in San Francisco under certain franchises granted to its predecessors, had constructed a double track line on Market street from the ferry to Seventeenth street, a distance of more than 20 blocks.   When the cars of the company reach their destination at the foot of Market street, they turn on a loop, the loop being situated on the property of the state of California; but the complainant company has the right to operate under a revocable license of the board of harbor commissioners, in which body is vested the control of the state property at the ferry.   Cars belonging to the municipality have operated on Market street, between Kearney street and the ferry, since November, 1912; the municipal cars, and what are called the "Sutter Street cars" operated by the complainant under an agreement to use tracks outside of, and parallel to, the tracks used by the United Railroads corporation, operating under franchise heretofore referred to.   The municipal cars and the Sutter Street cars make the turn at the ferry under an agreement to use a second or outer loop, on the state property, operating under the same license from the board of harbor commissioners.   The municipality claims authority to construct and threatens to construct a line which will parallel the lines of the United Railroads from Kearney to Seventeenth street, and from Church street to Van Ness avenue by way of Market street, crossing the tracks of the complainant in a number of places.   Complainant asks injunction preventing the city from constructing the proposed municipal lines upon Market street and the other streets described, and also from cutting the tracks of the complainant which form its intersecting lines with its main line on Market street. Issues were duly framed, hearing was had, and the matter submitted for decision.

At the time that the franchise under consideration was granted, on September 15, 1879, approved by the mayor of San Francisco, September 20, 1879, and accepted in writing by the predecessor of the present complainant, section 499 of the Civil Code of California provided as follows:

"Two corporations may be permitted to use the same street, each paying an equal portion for the construction of the track; but in no case must two railroad corporations occupy and use the same street or track for a distance of more than five blocks."

Incorporated in the franchise are the following sections:

. Section 2: "Except as herein otherwise provided, the rights and privileges mentioned in the foregoing section are granted to said Market Street Railway Company of San Francisco, and shall be possessed and enjoyed by said company, upon such terms, conditions and restrictions as are now imposed, or may hereafter be imposed, by the laws of the state of California, and especially the terms, conditions and restrictions imposed by the 498th and 500th and 502d

sections of the Civil Code of the state of California, in relation to the manner of constructing and maintaining street railroads in the cities and towns of said state and a strict compliance on the part of said company with all of the provisions of said laws is hereby required."

Section 5: "It shall be lawful for the board of supervisors of the city and and county of San Francisco to grant to one other corporation and no more the right to use either of the aforesaid streets for a distance of five blocks and no more, upon the terms and conditions specified in the 499th section of the Civil Code of this state. This section shall apply to persons and companies as well as corporations."

Section 12: "'Said railway company is hereby required to file in the office of the clerk of the board of supervisors of the city and county of San Francisco, an acceptance, in writing, of the provisions of this order, under its corporate seal, signed by its president, and countersigned by its secretary, and thereupon the provisions of this order shall be taken and deemed to be a contract between said company and said city and county. Unless such acceptance be filed within ten days after the passage of this order, this order shall become and remain null and void."

It is not necessary to set forth the specific provisions of further provisions of the statutes, and merely for convenience they may be cited as follows:

By an act of the Legislature of the state of California (St. 1869–70, p. 481, approved March 29, 1870) the board of trustees or supervisors of incorporated cities and towns were authorized to grant street railway franchises subject to certain restrictions. Among such restrictions we find, in section 1 of the last referred to statute, authority given to the trustees, city council or supervisors of incorporated cities, and boards of supervisors of the various counties outside of cities or towns incorporated, to grant to any person or corporation the right to lay down and maintain, for a term not exceeding 25 years, an iron railway upon tracks or public highways in the cities or towns or counties, outside of cities or towns incorporated, and to run cars thereon, and to carry passengers or freight: Provided that, whenever any other railroad or company shall be granted the use of the same street or any part thereof, they shall pay for the use of the rails laid an equal share of the cost and maintenance of the railroad on the street, or part of the street, thus jointly occupied, and thereupon shall be entitled to the joint use of such part of said railroad; but no such grant shall be made for more than five blocks in all.

By an act of the Legislature of April 4, 1870 (St. 1869–70, p. 786), section 1, just heretofore cited, was amended. The amendment gave the right to the trustees, city council or supervisors of all incorporated cities or towns, or the supervisors of any city or county within the limit of such cities and towns, or the boards of supervisors of such cities or counties outside of such cities or towns, to grant to any persons or corporation the right to lay down and maintain, for a term not exceeding 25 years, an iron track or tracks, upon any street or highway in said cities or towns, or in said counties outside of such cities or towns, and to run horse or other cars thereon: Provided, when any other railroad or company should be granted the use of the same street, or any part thereof, they should pay for the use of the rails already laid an equal share for the cost and construction and maintaining a railroad on the street, or part of the street, thus occupied jointly, and thereupon

should be entitled to the joint use of such part of said railroad; but no such joint grant should be made for more than two blocks in all. This section, 1, of the act just heretofore referred to was again amended on March 23, 1872 (St. 1871–72, p. 515). The amendment was substantially like the amendment of April 4, 1870, except that the joint grant contemplated was only authorized to be made in the city and county of San Francisco for not more than two blocks in all.

The Codes of California became effective January 1, 1873, and there we find the whole subject of street railroad corporations embodied in title 4, part 4, division 1, of the Civil Code (sections 497–511). Sections 497, 499, and 500 read as follows:

Section 497: "Authority to lay railroad tracks through the streets and public highways of any incorporated city or town may be obtained, for a term of years not exceeding fifty, from the trustees, council, or other body to whom is intrusted the government of the city or town, under such restrictions and limitations, and upon such terms and payment of license tax, as the city or town authority may provide. In no case must permission be granted to propel cars upon such tracks otherwise than by horses or mules, unless for special reasons, as hereinafter provided."

Section 499: "Two corporations may be permitted to use the same street, each paying an equal portion for the construction of the track; but in no case must two railroad corporations occupy and use the same street or track for a distance of more than five blocks."

Section 500. "Any proposed railroad track may be permitted to cross any track already constructed, the crossing being made as provided in chapter II, title III, of this part. In laying down the track and preparing therefor, not more than one block must be obstructed at any one time, nor for a longer period than ten working days."

Thereafter, in 1876 (St. 1876, p. 76), section 497 was amended, but reference to the amendment is unnecessary, further than to say that it was for the purpose of enabling franchises to be granted to be operated by cable lines. Thereafter, February 25, 1891, section 497 of the Civil Code was again amended (Statutes and Amendments of 1891, p. 12). The essential point of this amendment was to authorize electricity to be used as motive power, and to give to municipal authorities the right to impose such terms, restrictions, and limitations on the use of the streets, and the construction and mode of operating the railroads, as might be deemed necessary for public safety or welfare.

Section 499, heretofore quoted, was amended February 25, 1891 (St. 1891, p. 13), and the section made to read as follows:

"Two lines of street railway, operated under different managements, may be permitted to use the same street, each paying an equal portion for the construction of the tracks and appurtenances used by said railways jointly; but in no case must two lines of street railway, operated under different managements, occupy and use the same street or tracks for a distance of more than five blocks consecutively."

Again, in 1907, section 499 was amended (Statutes and Amendments 1907, p. 837), and we find the statute reading as follows:

"Two or more lines of street railway, operated under different managements, may by lease or contract, use the same street or tracks upon such terms as may have been agreed upon between the companies operating such railways; and two lines of street railway operated under different managements may be permitted to use the same street or tracks for a distance of five blocks without such lease or contract, upon payment of an equal portion for the construc-

tion of the tracks and appurtenances used by such railways jointly; but in no case shall a company owning or operating one line of street railway be permitted to condemn the right to occupy and use the same street or tracks for a distance of more than five blocks consecutively. Where such portion of such street shall be occupied by a track or tracks of a different gauge from the track or tracks proposed to be constructed thereon by a line of street railway under a different management, such last-méntioned line of street railway may nevertheless construct its track or tracks, subject to the limitation before prescribed, over the same ground as may be occupied by such prior track or tracks, provided the same can be so constructed as not to interfere with the operation of such prior track or tracks beyond such necessary interference therewith as shall be incident to such construction with reasonable skill, care and diligence."

Thereafter, in 1911, the Legislature amended section 499 by two provisions. They read as follows:

"The legislative body of any incorporated city, city and county, or town, may permit two or more lines of street railway to use the same portion of the same street or the same tracks upon such terms as may be agreed upon by the companies operating such railways; but no permission shall be granted to one company to use the same tracks or portions of the same street for a distance of more than five consecutive blocks without the consent of the person or company occupying said portion of the street and then only upon payment of an equal portion of the cost of construction of the tracks and appurtenances used by such railways jointly: Provided, that any incorporated city, city and county, or town may own and operate street railways within or without the municipal limits, and may occupy the same street or tracks occupied or used by any street railway within its limits for any number of blocks upon payment to the owner thereof of an equal portion of the estimated cost of construction, at the time of such occupation, of such tracks or appurtenances as such city, city and county, or town may elect to use jointly with said street railway. Where such portion of such street shall be occupied by a track or tracks of a different gauge from the track or tracks proposed to be constructed thereon by a line of street railway under a different management, such last-mentioned line of street railway may nevertheless construct its track or tracks, subject to the limitation before prescribed, over the same ground as may be occupied by such prior track or tracks; provided the same can be so constructed as not to interfere with the operation of such prior track or tracks beyond such necessary interference therewith as shall be incident to such construction with reasonable skill, care and diligence." St. 1911, p. 1101.

By section 4408 of the Political Code, effective from and after January 1, 1873, the board of supervisors of the municipality has power to regulate the streets in the city and the use thereof. On January 8, 1900, the charter of the city and county of San Francisco became effective as the organic law of the city and county of San Francisco. In section 1 of chapter 22 of the charter, as adopted, it was provided in subdivision 27 that the board of supervisors should have power to regulate street railroads, tracks and cars; to compel the owners of two or more of such roads, using the same street for any distance not exceeding 10 blocks, to use the same tracks and to equitably divide the cost of construction and expense of maintenance thereof between the owners; to fix, establish, and reduce the fares and charges for transporting passengers and goods thereon; to regulate rates of speed; and to pass ordinances to protect the public from danger or inconvenience in the operation of such roads. As amended in due form, in December, 1902, the amendment being approved by the Legislature February 5, 1903, the board of supervisors has the power to regulate

street railroads, tracks, and cars to permit two or more lines of street railways operated under different managements to use the same street, each paying an equal portion for the construction and repair of the tracks and appurtenances used by said railways jointly for such number of blocks consecutively, not exceeding 10 blocks, to regulate fares and charges for transporting passengers, to regulate rates of speed and pass ordinances to protect the public from danger and inconvenience in the operation of such road.

The Constitution of the state of California (section 19, art. 11), by amendment approved October 10, 1911, provides:

"Any municipal corporation may establish and operate public works for supplying its inhabitants with light, water, power, heat, transportation, telephone service or other means of communication. Such works may be acquired by original construction or by the purchase of existing works, including their franchises, or both. Persons or corporations may establish and operate works for supplying the inhabitants with such services upon such conditions and under such regulations as the municipality may prescribe under its organic law, on condition that the municipal government shall have the right to regulate the charges thereof. A municipal corporation may furnish such services to inhabitants outside its boundaries; provided, that it shall not furnish any service to the inhabitants of any other municipality owning or operating works supplying the same service to such inhabitants, without the consent of such other municipality, expressed by ordinance."

The contention of the complainant is that the threatened action of the city would violate the rights granted to the complainant by its franchises and guaranteed by the provisions of the federal and state Constitutions in these respects:

First. That the complainant's franchise constitutes an irrevocable contract, the obligation of which will be impaired by the proposed action of the municipal authorities.

Second. That such proposed municipal action will deprive the complainant of its property without due process of law and without compensation, contrary to the provisions of the Constitutions of the United States and the state of California.

Third. That the proposed municipal action will, in contravention of the Constitution of California, damage the property—that is, the franchise—of the complainant, without compensation first paid.

Fourth. That the municipality has not solicited and considered offers for the sale to the city and county of the line of the complainant, and has, therefore, not complied with the provisions of section 2, art. 12, of the charter, compliance with which is a condition precedent to the acquisition of a public utility.

After careful study of the case, and of the able briefs of counsel for the respective parties, I shall, without attempt at elaboration, state the conclusions I have reached upon those points which seem to me to be the most important.

[1] In the construction of legislative enactments and of ordinances and of contractual relationships which directly concern the public, the doctrine which controls is as announced in Knoxville Water Co. v. Knoxville, 200 U. S. 22, 26 Sup. Ct. 224, 50 L. Ed. 353:

"A municipal corporation, when exerting its functions for the general good, is not to be shorn of its powers by mere implication. If by contract or other-

wise it may, in particular circumstances, restrict the exercise of its public powers, the intention to do so must be manifested by words so clear as not to admit of two different or inconsistent meanings."

This general rule is but another form of stating a principle that statutory grants by way of franchise or property, in which the government or public has an interest are to be construed strictly in favor of the public, and whatever is not unequivocally granted is withheld. Nothing passes by implication.

It is very important to note that the words of direct expression or intention to grant an exclusive franchise are not to be found in the instrument itself; nor does it appear that exclusiveness was a positive consideration for the contractual obligation. Nor is there any expression by apt words to show that the city intended to exclude itself from exercising the privilege of establishing a street railway of its own. No deliberate purpose to make a surrender of exclusive rights appearing, I accept the more reasonable interpretation of the language used, and regard the franchise as not conferring such exclusive right as against the city, unless it must be held that the law itself operates to make the franchise exclusive pro tanto.

[2] Title 4 of the Civil Code, in which is found section 499, relates to street railroad corporations. Title 4 follows title 3, which has to do with railroad corporations, in contradistinction to street railroad companies. Section 497 of title 4 contains general authority to municipal bodies to give authority to lay street railway tracks through streets of cities and towns. Section 498 restricts the city authorities with respect to granting certain manner of construction.

In San Jose, Los Gatos, etc., Railway Co. v. San Jose Railway Co., 156 Fed. 458, 84 C. C. A. 265, 13 Ann. Cas. 571, the United States Circuit Court of Appeals for this circuit, speaking through Judge De Haven, of the main purpose of section 499, said it was:

"To protect the public from the inconvenience which would result if more than two railways under different managements were permitted to use the same street, or if two railways under different managements were permitted to use the same street for a distance of more than five consecutive blocks."

In Omnibus Railroad Co. v. Baldwin, 57 Cal. 168, the Supreme Court of California held that the first clause of section 499 means:

"That a right to use the same street cannot be granted to more than two corporations in any case, and if granted to two, it must be upon the condition that both use the same *track*, and that each pay an equal portion of the cost of constructing it."

The second clause was held not to contain anything which conflicted with the first, but as simply adding another limitation that:

"In no case must two railroad corporations occupy and use the same *street* or *track* for a distance of more than five blocks."

The learned court distinguished between the right of use of the same *track* and the permission to use the same *street* under conditions prescribed, and, after making references to such distinction, added that the limitation is not at all qualified in respect to permission to use the

same *street* on the conditions prescribed by the subsequent clause, which the court said—

"simply adds a further limitation, which in no sense can be regarded as inconsistent with that contained in the preceding clause."

The argument of the learned counsel for the complainant, addressed to the proposition that the provision against the use of the same street for more than five blocks by more than two railroad companies is a provision of substantive law, which became a part of the franchise and conferred upon the complainant pro tanto exclusive rights, has received very careful attention. So, also, has the contention that the change in the phraseology made in section 499 in the course of its history must be considered to have been made for a definite purpose, and that the purpose was the putting a prohibition upon the very use and occupation of the city streets by two railroad corporations, and not merely upon the power of the city to authorize complainant to use and occupy such streets.

And yet I believe that the section should be read as a whole, and is not to be separated into two wholly independent provisions, whereby the one is to be read as appertaining only to permission, and the other as solely writing a prohibition to be regarded as a general law of the state, binding upon municipal or other corporations, and not open to repeal or modification as affecting the franchise of complainant. The interpretation I put upon the last clause of section 499 is that in no case must two railroad corporations, granted permission under the section, occupy and use the same street or track for a distance of more than five blocks. Permission is indispensable. There may be permission for joint use, but such use shall not be authorized for more than five blocks. That this was the construction put upon the provision by those directly interested at the time of the grant of the franchise is a fair inference, when we consider the language of section 5 of the franchise, which provides, in effect, that the supervisors may grant to one other corporation, and no more, the right to use either of the streets described in the franchise, for a distance of five blocks, and no more, upon the terms and conditions specified in the 499th section of the Civil Code of the state.

In Wheeling & Belmont Bridge Co. v. Wheeling Bridge Co., 138 U. S. 287, 11 Sup. Ct. 301, 34 L. Ed. 967, the court declined to regard an act of the Legislature which was in force after the grantee had obtained his franchise, but which was repealed during the life of the franchise, as accompanied by any conditions that made the legislative act take the character of a contract; the court saying that it was a matter of ordinary legislation, subject to be repealed at any time that the judgment of the Legislature should require the appeal. The court said:

"An alleged surrender or suspension of a power of government respecting any matter of public concern must be shown by clear and unequivocal language; it cannot be inferred from any inhibitions upon particular officers, or special tribunals, or from any doubtful or uncertain expressions." Williams v. Wingo, 177 U. S. 601, 20 Sup. Ct. 793, 44 L. Ed. 906.

If I am right in my construction of section 499, the prohibition became subject to repeal at the legislative will.

[3] The argument of complainant would lead to a limitation upon the exercise of the police power which would restrict it within narrower limitations than I think is justified. It will not be disputed that definite limitations are not to be regarded as a surrender of the police power. It is accepted that the destruction of the franchise is not possible; but, even so, in the complexities of modern society, new conditions present themselves, which may call for the safeguarding of the public interests in a way which justifies the application of the doctrine that the police power may extend to all great public needs. German Alliance Insurance Co. v. Lewis, 233 U. S. 389, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189; Noble State Bank v. Haskell, 219 U. S. 110, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487; Camfield v. United States, 167 U. S. 524, 17 Sup. Ct. 864, 42 L. Ed. 260; Rail & River Coal Co. v. Yaple (D. C.), 214 Fed. 273.

These principles are not antagonistic to the further familiar principle that the police power of a state cannot be arbitrarily exercised. But the trend of authority is shown in Hadacheck v. Sebastian, Chief of Police of the City of Los Angeles, 239 U. S. 394, 36 Sup. Ct. 143, 60 L. Ed. 348, where the Supreme Court held that it is to be remembered that the police power is one—

"of the most essential powers of government, one that is the least limitable. It may, indeed, seem harsh in its exercise, usually is on some individual, but the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily. A vested interest cannot be asserted against it because of conditions once obtaining. * * * To so hold would preclude development, and fix a city forever in its primitive conditions. There must be progress, and if in its march private interests are in the way they must yield to the good of the community." Bacon v. Walker, 204 U. S. 311, 27 Sup. Ct. 289, 51 L. Ed. 499; German Alliance Insurance Co. v. Kansas, 233 U. S. 389, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189; Rail & River Coal Co. v. Yaple (D. C.) 214 Fed. 273.

If, as in Grand Trunk Western R. Co. v. South Bend, 227 U. S. 544, 33 Sup. Ct. 303, 57 L. Ed. 633, 44 L. R. A. (N. S.) 405, there was here a threat to destroy a franchise right, a very different case would be presented. The existence of the franchise enjoyed by the complainant is, however, not threatened, nor is an attempt being made to change or modify the provisions of the franchise.

[4] As to the need for the action contemplated by the city, but a word is necessary. The evidential showing negatives any idea of arbitrary exercise of power. Questions of traffic and of the increase of danger consequent upon increasing the number of tracks and street cars in a street being ordinarily matters for legislative rather than judicial control, the necessity for action by city authorities concerning transportation facilities is to be solved by the exercise of the judgment of the municipal authorities, proceeding within the limits of their general authority.

[5] There being no statutory rule against one street railway company crossing the tracks of another, I do not find that compensation

must first be paid for the crossing. Consolidated Traction Co. v. South Orange & Maplewood Traction Co., 56 N. J. Eq. 569, 40 Atl. 15, contains a very able discussion of the law upon this point—the court holding that, although a crossing necessitates some actual interference with tracks as constructed, and to some extent changes thereafter the exclusive use by the one company at the crossing, still such changes are the necessary result of the development of the method of operating electric roads at their points of crossing, and are such as are made necessary as the best and safest methods now attainable for the safety and convenience of the public in the operation of both roads at the point of crossing; that they are changes and burdens in the use of its tracks and trolley system, to which the original right to lay and construct them was necessarily subject. Sections 469 and 500 of the Civil Code do not affect the applicability of this general rule; moreover, it would seem that in Market Street Railway Co. v. Central Railway Co., 51 Cal. 583, a street railroad company within the state of California is properly using the streets upon which it has a right of way, and for crossing the tracks of another need not compensate that company for damages caused by the crossing, provided always the crossing is to be made in a suitable manner.

[6] Upon the point that the property of complainant will be taken or damaged, contrary to the Constitution of the United States and of the Constitution of the State of California, by interference with the exercise of the complainant's franchise, in that there will be a blanketing of the complainant's cars by the cars of the city, it is to be observed that some inconvenience will follow the construction and operation of the additional lines by the city. But complainant never has had a right by virtue of the franchise to such free and uninterrupted use of the streets as will relieve it of such inconvenience as may follow from the operation by the city of a municipal railroad, provided the right to operate such railroad was reserved to the city. Pacific Railway Co. v. Wade, 91 Cal. 449, 27 Pac. 768, 13 L. R. A. 754, 25 Am. St. Rep. 201.

Such inconveniences are susceptible to minimization by regulation, but do not authorize conclusion that there is violation of constitutional right. Competition may result injuriously, but it is not a taking. Madera Water Works v. Madera, 228 U. S. 454, 33 Sup. Ct. 571, 57 L. Ed. 915; N. Y. & H. R. R. Co. v. Forty-Second St. R. R. Co., 50 Barb. (N. Y.) 285. In Hamilton Gaslight Co. v. Hamilton, 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963, it was held that consideration of the possible impairment of the value of plaintiff's street railway company cannot control the decision of the legal rights of the parties. Contingencies of such character, if it is desired that they should be guarded against, must be anticipated by such clear and explicit language as will take the contract out of the established rule that public grants susceptible of two constructions must receive the one most favorable to the public.

The point that the municipality has not solicited and considered offers for the sale to the city and county of the lines of the United Railroads, and therefore has not complied with section 2, article 12,

of the charter, compliance with which is a condition precedent to the acquisition of a public utility, cannot be sustained, in the light of the proceedings pertaining to solicitation for offers and the proceedings of the board of supervisors. No point has yet been reached where injunction can be asked by complainant.

My opinion being that complainant has failed to make a proper case for injunction, decree will go against it, and in favor of respondent.

---

⊦köö For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes