CHAMBERLAIN FERRY AND CABLE PONTOON BRIDGE COMPANY, Respondent, v. KING et al. Appellants.

(170 N. W. 145).

(File No. 4450.   Opinion filed December 31, 1918)

**Ferries—Licensee's Injunction Against "High Water" Ferrymen— Statutes Construed—Swollen Streams, Common Knowledge of—Ferrying Without License, Explained.**

Under. Pol. Code, Sec. 1778, as amended by Laws 1903, Ch. 143, making it unlawful for any person to establish, maintain or operate upon any waters within the state, any ferry, etc., without first having secured a ferry lease therefor, and providing that when such lease has been granted no other lease shall be granted within a distance of two miles from the place described in the application for lease as a ferry landing, and providing a penalty for violation thereof, and Sec 1779, as amended by said Laws 1903, making it the duty of the county commissioners, or the mayor, etc., of any incorporated city, etc., to grant a ferry lease, for a prescribed term, and Sec. 1785, as amended by said Laws 1903, providing that nothing in this chapter shall prevent any person from ferrying persons or prop-

erty across any stream in this state, in time of high water, **held,** in a suit by holder of such lease against one who, without a lease, was operating a ferry upon the Missouri River under the claim, based upon Sec. 1785, that, because as shown by affidavits, the water in the Missouri River was "high" and that he could operate a ferry thereon within a two mile limit during high water,—Such claim was untenable; that Sec. 1785 did not repeal or modify Secs. 1785-9, but that the legislative intent in enacting Sec. 1785, was to provide for a state of things within common knowledge, to-wit, that there are streams in this state ordinarily crossable without a ferry, but which in times of high water can be safely crossed in absence of a bridge, only by means of a ferry; and during such emergency a ferry may be operated at such places, without securing a license and without violating Sec. 1778, or Sec. 1783, denouncing a forfeiture against anyone keeping a ferry in any county without a lease first obtained from county board, etc.; that it is lawful, except within territory covered by an existing license, to operate a ferry across any stream in this state during high water.

Appeal from Circuit Court, Brule County. HON. WILLIAM WILLIAMSON, Acting Judge.

Action by Chamberlain Ferry and Cable Pontoon Bridge Company, a corporation, against M. J. King and M. K. King, to enjoin defendants from operating a ferry. From an order enjoining defendants from operating a ferry during pendency of suit, they appeal. Affirmed.

*Bartine & Bartine,* for Appellants.

*Brown & Brown,* for Respondents.

POLLEY, J.  Plaintiff is a corporation. organized for the purpose of operating a ferryboat across the Missouri river at Chamberlain. During the year 1917, it secured a license purporting to grant it the exclusive right to operate a ferry from the foot of a certain designated street in Chamberlain to a point on the opposite side of the river, and thereafter proceeded to install and operate a ferryboat at such place. About the month of July, 1918, defendant, without the consent of plaintiff and, as claimed by plaintiff, in violation of the rights and privileges granted to it by the said license, commenced the operation of a ferryboat across the Missouri river at the place designated in plaintiff's license. Plaintiff thereupon commenced this action and applied to the court for a temporary injunction restraining and enjoining the defendant from the operation of the said ferry during the pendency of this

action. The order was granted as prayed for by plaintiff, and, from said order, defendants appeal.

Section 1778, Pol. Code, as amended by chapter 143, L. 1903, provides that:

"It shall be unlawful for any person to establish, maintain or operate upon any waters within this state any ferry, upon which to convey, carry or transport any persons or property, for hire or reward, without first having procured a ferry lease therefor, as hereinafter provided. * * * And when any ferry lease has been granted, no other lease shall be granted, within a distance of two miles from the place described in the application for a ferry lease as the ferry landing."

And said section further provides that any person violating any of the provisions of said act shall, for each offense, forfeit and pay to the proper county, city, town, or village not less than $10 nor more than $100. And section 1779, Pol. Code, as amended by chapter 143, L. 1903, makes it the duty of the board of county commissioners or the mayor and city council or trustees of any incorporated city, town, or village to grant a ferry lease, upon proper application therefor, for a term of not exceeding 15 years. Section 1785, P. C., as amended by chapter 143, L. 1903. reads as follows:

"Nothing in this chapter shall prevent any person or persons from ferrying persons or property across any stream in this state in time of high water."

It is made to appear from certain affidavits filed on behalf of appellants that, at the time they commenced the operation of their ferry, the water in the Missouri river was "high," and that, under the provisions of section 1785, it was lawful for them to operate said ferry, notwithstanding the fact that respondent had a license purporting to grant it the exclusive right to operate a ferry at that place. In other words, appellants contend that section 1785 repeals or so modifies the provisions of sections 1778, 1779, that they have no force or application during times of "high water." With this contention we cannot agree. Under sections 1778, 1779, a lease or license granted by the board of county commissioners or mayor and city council of a city or town constitutes an "exclusive franchise." Nixon et al. v. Reid et al., 8 S. D. 507, 67 N. W. 57, 32 L. R. A. 315. Section 1785 contains no ex-

press repeal nor modification of the provisions of sections 1778 and 1779; neither is it so inconsistent with sections 1778 and 1779 that all standing together may not be given a reasonable meaning. It is a matter of common knowledge that there are streams in this state that may be crossed in ordinary times without the use of a ferry, but which, in times of high water, can be safely crossed, in the absence of a bridge, only by means of a ferry. At such places there would not be sufficient inducement, nor would it be necessary, to maintain a ferry throughout the season of open water. It was to provide for such cases that section 1785 was enacted. During emergencies arising in times of high water, a ferry may be operated, where necessary, without securing a license and without violating the provisions of section 1778 or 1783. In other words, except within the territory covered by a license already in force, any party may operate a ferry across any stream in this state during a time of high water. To give section 1785 the construction claimed for it by the appellants would be to hold that the franchise issued under the provisions of section 1779 is subject to the right of any party, whenever he deemed the water to be sufficiently high, to maintain and operate a ferry at the very place named in such license and in opposition to the licensee. We do not believe such to have been the intent of the Legislature and refuse to so hold.

The order appealed from is affirmed.