LARSON, Plaintiff, v. STATE, Defendant.

(215 N. W. 880.)

(File No. 6289.   Opinion filed November 14, 1927.)

**Ferries—Franchise Rights Under Statutory Ferry Leases Held Not Violated by State's Construction of Bridge Near Ferry (Rev. Code 1919, §§ 8696, 8697; Const, art. 6, § 12; Const. U. S. art. 1, § 10).**

Franchise rights under ferry leases given by boards of county commissioners, under Rev. Code 1919, §§ 8696, 8697, authorizing granting of ferry leases, forbidding operation of ferry without lease, and providing that when ferry lease has been granted no other leases shall be granted within two miles from ferry landing, held not violated by erection of bridge by state within two miles from ferry landing, within meaning of Const. U. S. art 1, § 10, and Const. S. D. art. 6, § 12, forbidding impairment of obligation of contracts, since section 8696 refers solely to transportation by ferry.

---

Note.—See, Headnote (1), American Key-Numbered Digest, Ferries, Key-No. 19, 25 C. J. Sec. 23.

As to what amounts to interference with ferry franchise, see annotation in 30 L. R. A. (N. S.) 462; 11 R. C. L. 924; 2 R. C. L. Supp. 1339; 4 R. C. L. Supp. 726.

Erection of bridge as infringement of ferry franchise, see 11 R C. L. 925.

Original action by Captain John Larson against the State of South Dakota.   Demurrer sustained.

36—Vol. 51, S. D.

*W. M. Potts,* of Mobridge, and *Sutherland, Payne & Linstad,* of Pierre, for Plaintiff.

*Buell F. Jones,* Attorney General, and *E. D. Roberts* and *Ray F. Drewry,* Assistant Attorneys General, for the State.

GATES, J.   By this action plaintiff seeks to recover from the state the sum of $44,000 damages by reason of the destruction of his ferry franchises on the Missouri river. The complaint alleges the granting to plaintiff of a ferry franchise by the county commissioners of Walworth county at a point on the easterly bank of said river near the city of Mobridge, and the granting to him of a similar franchise opposite that point on the westerly bank of said river by the county commissioners of Corson county; that such franchises were exclusive for the distance of two miles above and below said points; that the state during the years 1923 and 1924, purusant to acts of the Legislature, constructed a steel and concrete bridge across said river within the confines of plaintiff's exclusive area; and that by reason thereof his ferry business has been destroyed, and his said franchises have become worthless. Other allegations of the complaint need not be mentioned. Among other grounds, the state has demurred to the complaint for that it does not state facts sufficient to constitute a cause of action.

Putting to one side all of the other points made, the demurrer must be sustained upon the ground that the erection of said bridge by the state was not a violation of the franchise rights granted plaintiff.

Section 8697, Rev. Code 1919, authorizes the board of county commissioners (in certain cases, the governing body of a city or town) to grant a ferry lease for a term not exceeding 15 years to the highest bidder. Section 8696 makes it unlawful for one to operate a ferry without first having procured a ferry lease, and provides:

"And when any ferry lease has been granted, no other lease shall be granted within a distance of two miles from the place described, in the application for a ferry lease, as the ferry landing."

In support of his contentions plaintiff asserts that his lease was an exclusive franchise to transport persons and property across the Missouri river within the 4-mile limit on both sides of the river and that the erection of the bridge was an impairment of the obli-

gation of his contract. Const. U. S. art. 1, § 10; Const. S. D. art. 6, § 12.

All that is contemplated by the statute and all that was granted by the plaintiff's leases was the right to operate a ferry together with a prohibition upon the granting boards from granting other ferry leases within the granted area during the period. While in Nixon v. Reid, 8 S. D. 507, 67 N. W. 57, 32 L. R. A. 315, the granted right was referred to as an exclusive license, and in Chamberlain F. & C. P. Bridge Co. v. King, 41 S. D. 246, 170 N. W. 145, the granted franchise was referred to as an exclusive franchise, yet no more was expressed, or intended to be expressed, thereby than what we have above defined. Nowhere in the statute can be found or implied a provision that the state was binding itself not to construct, nor authorize the construction of, a bridge across the river within the 4-mile area, or not to permit carriage by aviation across it. The fair and reasonable construction of the statute is that it refers solely to transportation by ferry. In Wheeling & Belmont Bridge Co. v. Wheeling Bridge Co., 138 U. S. 287, 11 S. Ct. 301, 34 L. Ed. 967, the court said:

"An alleged surrender or suspension of a power of government respecting any matter of public concern must be shown by clear and unequivocal language; it cannot be inferred from any inhibitions upon particular officers, or special tribunals, or from any doubtful or uncertain expressions. As was said substantially in the case of Charles River Bridge v. Warren Bridge, 11 Pet. 420, 548, whenever it is alleged that a state has surrendered or suspended its power of improvement and public accommodation on an important line of travel, along which a great number of persons must daily pass, the community has a right to insist that its surrender or suspension shall not be admitted, in a case in which the deliberate purpose of the state to make such surrender or suspension does not appear."

In Williams v. Wingo, 177 U. S. 601, 20 S. Ct. 793, 44 L. ed. 905, the court said:

"The contention of the plaintiff in error is that, under the laws of the state of Virginia in force at the time of such action, the license granted by the county court to him to establish a ferry created a contract between him and the state to the effect that no other ferry should be established within half a mile; and that

the act of 1894 and the subsequent proceedings of the county court of Giles county impaired the obligation of that contract, and, therefore, were repugnant to section 10 of article 1 of the Constitution of the United States. This is an obvious error. The act of 1840 was one of general legislation, and subject to repeal by the General Assembly. No rights could be created under that statute beyond its terms, and by it no restraint was placed upon legislative action. When the General Assembly gave to the county courts power to license ferries it by that act in effect forbade them to establish a second ferry within half a mile of one already established, but that bound only the county court. It did not tie the hands of the Legislature, or prevent it from authorizing another ferry within a half mile whenever in its judgment it saw fit. A contract binding the state is only created by clear language, and is not to be extended by implication beyond the terms of the statute."

While the erection of the state bridge has concededly destroyed the value of plaintiff's ferry leases, yet it has not violated the obligation of contract. The contracts did not contemplate a restraint upon the state from building a bridge.

The demurrer to the complaint will be sustained upon the ground that no cause of action is alleged.

CAMPBELL, P. J., and POLLEY, SHERWOOD, and BURCH, JJ., concur.