CASE 48.—SUIT  BY  THE  BOARD  OF  EDUCATION  FOR
        CHRISTIAN   COUNTY   AGAINST   CHARLES   O.
        PROWSE  AND  THE  FISCAL  COURT  OF  THE
        COUNTY, FOR A MANDAMUS TO LEVY A SCHOOL
        TAX.—June 18, 1909.

# Prowse, &c. v. Board Education Christian County

Appeal from Christian Circuit Court.

THOMAS P. COOK, Circuit Judge.

From an order granting the writ, defendants appeal.—Affirmed.

1.  Statutes—Repeal—General Repeal of Inconsistent Acts.—
    Act March 24, 1908 (Acts 1908, p. 133, c. 56; Ky. St. 1909,
    Sec. 4426a), relating to public schools and providing that all
    laws, and parts of laws in conflict therewith were thereby
    ‘repealed, did not constitute the whole school law, but only
    revealed so much of the old law as was in conflict with the
    new.

2.  Schools  and   School   Districts—School  System—Legislative
    Determination.—Under Const. Sec. 183, requiring the Gen-
    eral Assembly to provide, by appropriate legislation, an ef-
    ficient system of schools throughout the state, it is for the
    General Assembly to determine what system will be most
    efficient.

3.  Schools and School Districts—Statutes.—Act March 24, 1908
    (Acts 1908, p. 133, c. 56; Ky. St. 1909, Sec. 4426a), regulat-
    ing public schools was intended mainly to substitute a county
    board having control of all the schools in the county, for
    the district board of trustees previously existing; the act
    being intended to apply only to territory lying outside of
    graded school districts.

4.  Schools  and   School  Districts—Constitutional  Provisions—
    White and Colored Children.—While the Constitution re-
    quires the General Assembly to maintain separate schools
    for white and colored children, it does not require a separ-
    ate system of education for both.

Prowse, &c. v. Board of Education of Christian County.

5. Schools and School Districts—Separate Colored Schools—Statutes.—Act March 24, 1908 (Acts 1908, p. 133, c. 56; Ky. St. 1909, Sec. 4426a), regulating public schools did not affect the provisions of the old law requiring separate schools for white and colored children, and forbidding white children to attend colored schools, or vice versa.

6. Schools and School Districts—Establishment—County Board.—Act March 24,1908 (Acts 1908, p. 133, c. 56; Ky. St. 1909, Section 4426a), regulating schools and school districts, vests the power to establish school districts for white and colored children in the sound discretion of the county boards.

7. Schools and School Districts—High Schools—White and Colored Children.—Act March 24, 1908 (Acts 1908, p. 133 c. 56; Ky. St. 1909, Sec. 4426a), for the governing and regulation of the common schools of the state, and providing that within two years after its passage there should be established by the county board of education of each county one or more county high schools, providing there was not already existing in the county a high school, which in that event might be considered as meeting the purpose of the act, was not unconstitutional for failure to require a separate high school for whites and blacks, and that, if a high school was established for whites, there would be a discrimination against the blacks, since the act did not contemplate any such discrimination, but required an efficient system of separate schools for both races.

8. Schools and School Districts—Statutes—School Funds.—Act March 24, 1908 (Acts 1908, p. 133, c. 56; Ky. St. 1909, Sec. 4426a), regulating public schools, is not unconstitutional in that it requires the fiscal court to make a levy sufficient to raise the sum found necessary by the board of education, since, in obeying the constitutional mandate to provide an efficient school system, the Legislature must necessarily have the discretion of choosing its own agencies, and conferring on them the powers' deemed by it essential to accomplish the required end.

JOHN C. DUFFY, HAZELRIGG & HAZELRIGG and McQUOWN & BECKHAM for appellants.

1. This is not an amendment of the existing laws for the government and regulation of the common schools of the state in distinction from the graded and high schools of the cities and towns, but is a complete law of the state for that purpose.

2. The act is unconstitutional because it does not provide an efficient uniform system of common schools for every part of the state for both white and colored children.

Prowse, &c. v. Board of Education of Christian County.

3.  This is unconstitutional because it authorizes the election of white trustees for colored schools and colored trustees for white schools.

4.  The act is unconstitutional because it does not provide for separate county high schools.

5.  It is unconstitutional because it makes a discrimination between white and colored children in a sub-district in the distribution of the state school fund in violation of Sec. 187 of the Constitution.

JAS. BREATHITT, Attorney General, TOM. B. McGREGOR, Assistant Attorney General and J. A. Sullivan for Appellee.

### APPELLEE'S CONTENTION.

Counsel for Appellee very seriously and earnestly contend:

First:  That the new school act, approved March 24, 1908, is not unconstitutional, but is a valid expression of legislative intent, within the boundaries of our constitutional inhibition, upon the part of the General Assembly to give the Commonwealth of Kentucky a better and more efficient system of public schools.

(1.)  It does not violate either the letter or the spirit of section 183 of the Constitution, in that it does not provide for an efficient system of public schools; because it is not an attempt by the General Assembly to provide for a complete system of public schools, applying throughout the entire State. It is only an amendment to the system already established. Its title proclaims it to be only "for the government and regulation of the common schools of the State." It applies only to a part of the system. By its repealing clause it does not do away with the old system, but only repeals so much as is in conflict with it.

(2.)  That it recognizes the political unit of the South—the County, by abolishing the district system, and recognizing the County system, which is found in every southern State except Arkansas.

(3.)  That it makes the county the unit for taxation, and these taxes are collected as State and county revenue is collected, and by the same officials.

(4.)  That it provides for a system of County High Schools, to maintain a course of study prepared by the State Board of Education.

(5.)  That it does away with the old cumbersome, iniquitous and antequated trustee system.

(6.)  That it is a step toward modernizing our educational system in Kentucky, and makes our system of public schools more efficient; in fact, it is a sane, progressive system, as good as any modern school system known to any State in the Union.

(7.) It gives us better local accommodations than heretofore.

(8.) That is enables us to procure a higher grade of teachers and a better quality of teaching.

(9.) That it makes possible longer teaching periods or terms.

(10.) That it provides for a better management of schools.

(11.) That it insures us greater economy in the expenditure of the State school fund.

(12.) That it gives the taxpayer more value received for his money and the State more educated and better educated citizens than heretofore.

(13.) That the General Assembly had in mind the needs of the schools of the State and of the State itself, and, recognizing these, sought to give these needs proper relief.

(14.) That the establishment of this system in the public schools of the State is in keeping with the progress and reforms of rural Kentucky in the matter of better roads and highways, improved methods in agriculture, rural free delivery and telephones, horticulture and forestry, and many other modern institutions, now being used by the citizens of the Commonwealth for their benefit——primarily—but ultimately for the State-at-Large.

(15.) That this law is in keeping with the educational spirit and progress of Kentucky in its establishment of a State University and system of Normal schools, and the recent giving to them of over half a million dollars for their needs.

Second: In the second place, counsel for appellee contends that this Act of March 24, 1908, does not violate the provisions of section 187 of the Constitution, because

(1.) It makes no distinction whatever in the distribution of the State school fund between white and colored school children.

(2.) It makes no interference whatever with the maintaining of separate schools for white and colored children, but further provides for keeping and maintaining them separate, in conformity with the Constitution itself, a recent act of the legislature, and of the decisions of this Court and the Supreme Court of the United States in the case of Berea College v. Commonwealth.

Third: Again counsel for appellee contends that the County Board of Education has the discretion in determining what sum or amount is necessary for county school purposes, and that the Fiscal Court is not alone, or at all vested with this power of discretion; and further, that the provisions of this act make it mandatory upon the part of the Fiscal Courts to lay the county levy as required therein.

OPINION  OF  THE  COURT  BY  JUDGE  HOBSON—Affirm-
ing.

Under an act entitled "an act for the government
and regulation of the common schools of this state,"
approved March 24, 1908 (see Acts 1908, p. 133, c.
56; Ky. St. Sec. 4426a), the board of education of
Christian county, by written statement asked the fis-
cal court of that county to make a levy on all prop-
erty subject to taxation under the act, sufficient to
raise the sum of $10,000, exclusive of the cost of col-
lection for school purposes for the school year be-
ginning July 1, 1909. The fiscal court, being advised
by the county attorney that the act was unconstitu-
tional, refused to make the levy, and thereupon the
board of education brought this suit in the Christian
Circuit Court to obtain a writ of mandamus against
the members of the fiscal court compelling them to
make the levy. The defendants entered their appear-
ance, and filed a demurrer to the petition. The court
overruled the demurrer. The defendants declined to
plead further, and the court granted the writ as
prayed. The defendants appeal.

While the act makes radical change in our present
school laws, it was manifestly not intended to be the
whole law on the subject. The repealing clause is in
these words: "All laws and parts of laws in conflict
with this act are hereby repealed." Under this pro-
vision only so much of the old law as is in conflict
with the new law is repealed. There are many sub-
jects embraced in the old law which are not touched
by the new; and it is manifest from the act that it
was only intended to change the existing law in the
particulars to which it relates. Section 183  of the

Constitution requires the General Assembly to provide by appropriate legislation an efficient system of common schools throughout the state. What system will be most efficient is for the judgment of the General Assembly. The Legislature was of opinion that the old system was not as efficient as it should be, and that some change was necessary. It also evidently concluded that the proposed change would make the schools more efficient. In a matter like this, resting within the discretion of the General Assembly, the court will not substitute its judgment for the judgment of the Assembly, and it will not interfere with the action of the Legislature, unless a palpable effort to evade the mandate of the Constitution should appear. The common school system heretofore has consisted of a school in each district controlled by three trustees elected in that district. The main purpose of the act in question is to substitute a county board, having control of all the schools in the county, for the district boards of trustees heretofore existing. Graded schools are excepted out of the operation of the act. The act only applies to the territory lying outside of any graded school district. The white children and the colored children within any city or graded school district remain under the old law, and are in no wise affected by this act, as it only applies to that part of the county outside of these districts. No injustice is therefore done either the white or colored children in graded school districts by the act; for these districts are governed by the old law, as though this act had not been passed. In providing for a school board to have charge of all the schools in the county outside of the graded school districts, whether white or colored, the Legislature did not introduce a new idea into our laws. We have

the same system now in the cities of the common-wealth, and the experience of the working of these boards in the cities no doubt prompted the Legislature to extend the same system to the country districts. While the Constitution requires the General Assembly to maintain separate schools for white and colored children, it does not require a separate system of education for both. We have always had one State Superintendent, who has charge of all the schools of the state; one State Board of Education, whose jurisdiction extends alike over white and colored people; one county superintendent, who has charge of all the schools in the county. To provide for a county board of education is in line with the laws that have always been in force. If the law does not work well in its present shape, the General Assembly may remedy the evil, but this is a matter addressed to its discretion. The act is not unconstitutional because the Legislature provided for only one county board of education.

All of the provisions of the old law requiring separate schools for white and colored children, and forbidding that white children shall attend colored schools, or that colored children shall attend white schools, are left in force by the act. In fact section 17 of the act recognizes that there must be separate districts for white and colored children. It is.insisted that under section 2 of the act a school district may not contain less than 40 white children nor more than 100, and that as the districts are to be established on this basis, great injustice may be done the colored children. To prevent this, section 17 was inserted in the act, giving the county board power to consolidate any two or more districts with reference to the needs of either white or colored children. If

there are not enough colored children in any district, it may be consolidated with some other colored district, so that injustice shall not be done. The question of laying off the counties into districts so as to do no injustice to either race is not without difficulty, as there are in some of the counties of the state a large number of colored people, and in a large part of the state few or no colored people. And so the Legislature left the matter of the school districts to be worked out by the county boards in each county according to their sound discretion, upon the idea that these boards being upon the ground could solve the question better than the Legislature.

The act provides that within two years after its passage there shall be established, by the county board of education of each county, one or more county high schools, provided there is not already existing in the county a high school, and that, in this event, the high school may be considered as meeting the purposes of the act, without the establishment by the board of a high school. It is insisted that the act is void because it does not require a separate high school for whites and blacks, and that, if a high school is established for whites, there will be a discrimination against the blacks. But it will be observed that the act requires the board to establish one or more high schools. The act also provides that the money derived from the taxes shall be spent by the board according to its best judgment to promote the cause of education in the county. When the board of education shall discriminate against either race, then the race discriminated against may raise that question. The act does not contemplate that there shall be any discrimination. The act is passed under the provision of the Constitution requiring the Legislature

to provide an efficient system of common schools, and to maintain separate schools for white and colored children. The duty imposed by the Constitution upon the Legislature is the same as to both white and colored children, both as to separate schools and as to the efficiency of the schools. The county board holds office under the Constitution, and in discharging their duties they should administer the funds as provided by the Constitution, according to their best judgment. There is nothing in the act authorizing any discrimination.

The act is not unconstitutional in that it requires the fiscal court to make a levy sufficient to raise the sum found necessary by the board of education. In obeying the constitutional mandate to provide an efficient system of common schools the Legislature must necessarily have the discretion of choosing its own agencies, and conferring upon them the powers deemed by it necessary to accomplish the ends aimed at. The whole subject of common school education is confided to the judgment of the General Assembly by the Constitution. It may create such agencies as it deems proper to carry out the provisions of the Constitution. The General Assembly comes fresh from the people. After a short session of 60 days it returns to the people, and if any measures conceived by it to provide an efficient system of common schools throughout the state shall not prove satisfactory to the people, they have ample remedy in their own hands to correct the evil. While Kentucky has spent large sums for education, the fact remains that our percentage of illiteracy is far above the average in the states about us; and it must be conceded by all that there was urgent need of some action by the

General Assembly to provide a more efficient system of common schools than we have had. On the whole case, we find nothing in the act that is unconstitutional.

Judgment affirmed.