## Grady v. Larue County Board of Education.

(Decided June 14, 1912.)

### Appeal from Larue Circuit Court.

1. Schools—Acts Relating to Government of.—The act approved March 24, 1908 (Acts 1908, p. 133; c. 56; Ky. St. 1909, Sec. 4426a), relating to the government of the common schools of the State, applies only to the territory of the county lying outside of any graded school district.

2. Same—Separate Schools for Colored Children.—The act approved March 24, 1908 (Acts 1908, p. 133, c. 56; Ky. St. 1909, Sec. 4426a), relating to the government of the common schools of the State,

requires a school organization and districting for colored children entirely separate and apart from that provided for white children, both schools, however, being under the control and management of the County Board of Education.

3. Same.—Where a common school district for colored children embraces within its boundary a graded school district for white children; the County Board of Education may erect a common school building for colored children within that portion of the territory of the common school district for colored children, which also lies within the boundary of the graded school district for white children.

CHARLES T. CREAL for appellant.

E. W. CREAL for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

Graded common school district No. 32 for white children in Larue County, embraces the town of Hodgenville and the adjacent territory extending about two and a half miles in every direction from the site of the school building therein. The Hodgenville common school district for colored pupils known as colored common school subdistrict "A," embraces all the territory of the graded common school district No. 32 for white children, and quite a good deal of territory outside of and contiguous to said graded common school district No. 32 for white pupils. This result is brought about by the comparatively small number of colored pupils in that vicinity, which requires a larger territory to supply the required number of colored pupils to make a district. No graded school for colored children has ever existed in subdistrict "A," or any portion thereof, and many of the colored pupils within that district reside within the boundary of the graded common school district No. 32 for white pupils. The affairs of said colored school subdistrict "A" have been conducted under the direction and supervision of the County Board of Education; and, on April 7, 1912, by an order entered of record, said board appropriated the sum of $585 for the purpose of erecting a school house for said colored school subdistrict "A," and have secured a site for said building within the boundary of the graded common school district No. 32 for white children. Contending that the board has no right to build said colored school within the boundary of the white graded school district, appellant brought this

action to enjoin the erection of said school building. The circuit judge sustained a demurrer to the petition, and the plaintiff having declined to plead further, the petition was dismissed, and plaintiff has prosecuted this appeal.

The statute provides for separate schools for the white and colored children, and prohibits either from attending the schools provided for the other. The act of 1908 made a radical change in the school laws of the State, although it is not the whole law upon the subject.

Referring to the Act of 1908 in Prowse v. The Board of Education of Christian County, 134 Ky., 370, we said:

"The main purpose of the Act in question is to substitute a county board, having control of all the schools in the county, for the district board of trustees heretofore existing. Graded schools are excepted out of the portion of the Act. The Act only applies to the territory lying outside of any graded school district."

Appellant contends, therefore, that since the County Board of Education has no control over graded school districts, it is without power or authority to erect the building for the colored common school within the territory of a graded school district, as is attempted in this case. This, however, is a misconception of the effect of the statute, which requires a school organization and districting for the colored children entirely separate and apart from that provided for the white children. This, however, is no new idea; it is but a perpetuation of the views that have always predominated in the government of the schools of this Commonwealth. In the Prowse case, above quoted, we said:

"In providing for a school board to have charge of all the schools in the county outside of the graded school districts, whether white or colored, the Legislature did not introduce a new idea into our laws. We have the same system now in the cities of the Commonwealth, and the experience of the working of these boards in the cities no doubt prompted the Legislature to extend the same system to the country districts. While the Constitution requires the General Assembly to maintain separate schools for white and colored children, it does not require a separate system of education for both. We have always had one State Superintendent, who has charge of all the schools of the State; one State Board of

Education, whose jurisdiction extends alike over white and colored people; one county superintendent, who has charge of all the schools in the county. To provide for a county board of education is in line with the laws that have always been in force. If the law does not work well in its present shape, the General Assembly may remedy the evil, but this is a matter addressed to its discretion. The act is not unconstitutional because the Legislature provided for only one county board of education."

The County Board of Education has complete control over the common schools of the county, except the graded schools and other schools excepted by subsection 2 of section 4426a of the Kentucky Statutes—colored common schools being not among the exceptions. In carrying out the scheme of separate schools for white and colored children, it is a self-evident proposition that the districts for colored common schools will be covered by the territorial districts of the white common schools; and, where, as in the case at bar, there is no colored graded school within the subdistrict "A," the colored common school district may embrace the white graded school district within its territory. As an illustration; take the case where two adjoining white graded school districts comprise a single colored common school district. If appellant's argument were sound, it would be impossible to build either a colored graded school or a colored common school building within this colored school district, because in doing so it would be necessary to erect the building within the boundary of a graded white school. Manifestly, this is an untenable position, which arises from a failure to keep in mind the fact that the districting of the county for school purposes is made upon two entirely different schemes, one for white children and the other for colored children; and, when the statute provides that the County Board of Education shall have no control over the graded school districts of the county, it means only that it has no jurisdiction over such territory in so far as it has been converted into a graded school district for one or both of the two classes. If a given territory exists as a graded school district for white children only, the County Board of Education has no jurisdiction over said territory for the education of white children; but it still has complete control and juris-

diction over such territory for colored school purposes.

It follows, therefore, that the appellee was acting entirely within its jurisdiction when it undertook to build the school house in question within the territory of the colored school district "A," although a portion of that district, including the site upon which the school house is to be erected, is also embraced within the territory of the graded school district No. 32 for white children.

Judgment affirmed.