## Smith et al. v. State Highway Commission et al.

(Decided Feb. 28, 1933.)

E. C. O'REAR and ALLEN PREWITT for appellants.

BAILEY P. WOOTTON, Attorney General, GARDNER K. BYERS, Assistant Attorney General, and LAWRENCE & CARTER for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

By chapter 274, Acts of the General Assembly of Kentucky 1926, there was established as a part of the

primary system of highways in this state a road from Tompkinsville by way of Rock Bridge, Cyclone, Beaumont, and Good Luck to Cedar Flat to intersect with another project at the latter point. This was later designated by the state highway commission as project No. 149.

Thereafter an election was called by the fiscal court of Metcalfe county to determine whether the county should issue and sell bonds in the sum of $125,000 for the purpose of building roads and bridges therein. Embodied in the order calling the election was a pledge upon the part of the court that, in the event it was authorized to issue and sell the bonds, it would expend the proceeds thereof in the construction of certain roads in the order mentioned, the second road designated therein being "the road leading from Edmonton to the Monroe county line as will best connect with roads leading to Burkesville and Tompkinsville." In locating that part of project No. 149, between Good Luck and Beaumont, the State Highway Commission surveyed and adopted a route through the valley of Rogers Creek, known as the "creek" or "valley" route, but later made a resurvey and adopted what is known as the "ridge" route, which does not go through Beaumont, but intersects the Glasgow-Burkesville highway three-fourths of a mile or more from that point.

J. T. Froedge and other citizens and taxpayers, who reside along or near the proposed highway, for themselves and for and on behalf of other citizens and taxpayers of the county similarly situated, instituted an action in the Franklin circuit court to enjoin the highway commission from constructing the ridge road, and to require it to adopt the valley route. As a basis for the relief asked, it was alleged that the bonds were voted on faith of the pledge by the fiscal court that the proceeds would be used to construct project No. 149 by way of Good Luck and Beaumont; and that the route adopted by the highway commission was not a substantial compliance with the statute.

The lower court denied the relief asked, but granted the plaintiffs 20 days within which to apply to a judge of this court to reinstate the injunction. Within the time fixed by the order, a motion was made before Judge Clay to grant the injunction, and all the members of the court except Judge Richardson sat with him

on the hearing of the motion, and concurred in an order and memorandum opinion directing the lower court, on return of the case and upon execution of proper bond, to issue an injunction restraining the State Highway Commission, until further orders of the court, from adopting any route that did not go by way of Good Luck and Beaumont. The conclusions reached on the questions presented on the hearing as summarized in the opinion are:

"(1) There was no official action on the part of the fiscal court sufficient to constitute a contract with, or a pledge to, the voters that the proceeds of the bond sale would be used in the construction of a highway by way of Good Luck and Beaumont.

"(2) Where the Legislature fixes the terminal points of a proposed route, the state highway commission has a broad discretion in locating the route between those points. However, if the statute provides that in reaching the terminal points the project shall go through certain intermediate points, the statute cannot be ignored by the commission, but the road must be constructed between those points. However, the route and location of the road between such intermediate points is a matter within the discretion of the state highway commission, and this discretion will not be interfered with, except in a case of plain and palpable abuse.

"(3) The statute provides that the project shall go from Tompkinsville by way of Rock Bridge, Cyclone, Beaumont, Good Luck, to Cedar Flat. Beaumont is not a mere community, but is an established point. The proposed route does not go by way of Beaumont, but passes at a point 3,700 or more feet distant. In our opinion this is a departure from, and not a substantial compliance with, the statute.

"As we cannot substitute our judgment for that of the state highway commission, or otherwise control its discretion, in locating the road between Good Luck and Beaumont, the motion to grant the temporary injunction compelling the commission to adopt the valley route is overruled. The motion to restrain the adoption of the ridge route is sustained to the extent that it does not go by way of Beaumont."

At its 1932 session the General Assembly passed an act (chapter 182, Acts 1932) which, including the title, reads:

"An Act to establish as a part of the primary system of the Highways of the Commonwealth of Kentucky a road from Good Luck to the Monroe County line at or near Cyclone and authorizing the State Highway Commission of Kentucky to select and adopt the most direct and practical route between said points and repealing all acts in a conflict in the extent of such conflict.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"Sec. 1. That there is hereby established as a part of the primary system of State Highways of the Commonwealth of Kentucky a road from Good Luck in Metcalfe County to the Monroe County line at or near Cyclone.

"Sec. 2. The State Highway Commission of Kentucky is hereby authorized to select and adopt the most direct and practical route between the two points named in section one for the construction and maintenance of said road.

"Sec. 3. The construction, maintenance, supervision and control of said road shall be subject to all terms and provisions set out and provided for in Chapter 17 in the Acts of the General Assembly, 1920, as amended.

"Sec. 4. All acts and parts of acts in conflict herewith to the extent of such conflict are hereby repealed."

After the latter act became effective, the state highway commission advertised for bids for the construction of a highway from Good Luck to the Monroe county line following the ridge route as theretofore surveyed and adopted. S. D. Pace and others as partners doing business under the name of the Cumberland Construction Company having submitted the lowest bid therefor, their bid was approved by the state highway commission.

On August 10, 1932, Roy Smith, J. T. Froedge, and other citizens and taxpayers of Metcalfe county, on their own behalf, and on behalf of others similarly

situated, instituted another action against the state highway commission and the Cumberland Construction Company asking for a declaration of rights as between the parties, and seeking to enjoin the construction of the ridge route, and to compel the highway commission to construct the road along the valley route as originally surveyed and adopted; and to enjoin the certification for payment of any claim of the Cumberland Construction Company on account of contract to construct the proposed ridge route.

The actions were consolidated, and on final hearing the chancellor made a declaration of the rights of the parties, overruled the motion for mandatory injunction to require the state highway commission to construct the route by Beaumont and for final injunction restraining its construction except by that point, and adjudged that the petitions in the consolidated cases be dismissed. Plaintiffs have appealed.

As a basis for the relief asked in the second action, it is alleged that chapter 182, Acts of 1932, is violative of section 51 and also of section 59, subsections 16 and 29 of the Constitution of Kentucky, and this is the ground argued and relied on for reversal.

Section 51 reads:

"No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length."

It is argued by counsel for appellant that this act deals only with a short stretch or segment of road which it attempts to tack onto the middle of the route created by the act of 1926, for the sole purpose of eliminating Beaumont, and therefore it is not a complete independent legislative enactment, but merely amendatory of the 1926 act, and, as such, void because it does not conform to that portion of the quoted section of the Constitution relating to amendments.

No cases from this or other jurisdictions are cited in support of the theory advanced by appellants' counsel, but they do cite and rely upon some eminent text

authorities and attempt to distinguish some leading cases from this court relied on by appellees.

Looking to the act itself, we find no express declaration of a purpose to amend the act of 1926, and nothing to warrant the implication or from which to draw a natural or reasonable inference that it was so intended. Therefore, if a basis is to be found for holding the act to be in contravention of section 51, we must look beyond the act itself to matters wholly extrinsic.

Anything that might be said in a discussion of this question would be in the nature of repetition or reiteration of what this court has written in many of the former opinions in determining the merit of charges that acts challenged were invalid because not in conformity with this constitutional provision. The ground has already been covered and the way indicated by opinions so decisive as to exclude all doubt concerning the course to be followed.

In the case of Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, 166 S. W. 1017, 1021, it is said:

"Of course, many laws that are enacted by the Legislature touch in some way existing laws, either by amending, extending, or repealing them, but, notwithstanding this, the Legislature, by a new act that does not purport in its title or body to amend, revise, or extend an existing law, may, in fact revise, amend, or extend it, free from the control of section 51, and this has been often done."

The opinion then follows with an exhaustive discussion of opinions theretofore rendered bearing upon the question, including the leading cases of Purnell v. Mann, 105 Ky. 87, 48 S. W. 407, 49 S. W. 346, 50 S. W. 264, 20 Ky. Law Rep. 1146, 1396, 21 Ky. Law Rep. 1129; Prowse v. Board of Education, 134 Ky. 365, 120 S. W. 307; and in summing up the effect of the decisions as a whole says:

"* * * (c) That when the act does not purport to be an amendment to an existing law, but a new act, it is not necessary to set out or republish any part of any old law that may be changed or repealed by the new law."

In Lakes v. Goodloe, 195 Ky. 240, 242 S. W. 632, 638, among other things, it is said:

"It is well settled that a later act of the General Assembly, which is an independent enactment and does not purport to amend or revise any prior act, and makes no reference to any prior act, may have the effect of amending or repealing as many prior acts as are inconsistent with it, and that without referring to them, or re-enacting any portion of them, and also without suffering annihilation from the provisions of section 51 of the Constitution."

These opinions and the rules therein enunciated have been consistently followed and adhered to in all subsequent opinions dealing with the question. Gross v. Fiscal Court, 225 Ky. 641, 9 S. W. (2d) 1006; Owensboro v. Board, 210 Ky. 482, 276 S. W. 143; Nuetzel v. Keller, 205 Ky. 340, 265 S. W. 817; Link v. Commonwealth, 205 Ky. 243, 265 S. W. 804; Lewis v. Mosely, 215 Ky. 573, 286 S. W. 793.

Measuring the act in question by the standard definitely adopted by the court, we are constrained to hold that it does not violate section 51.

If the act of 1932 is vicious because in conflict with subsections 16 and 29 of section 59 of the Constitution, then as a necessary corollary the act of 1926 has the same inherent vice, and, not only so, but practically all acts serving as a foundation for a magnificent system of state highways are likewise void as contravening those provisions.

When we come to consider the history of legislation prior to the adoption of the present Constitution, it is at once apparent that section 59 was intended to curb the prevailing evil of legislative enactment relating to affairs purely local in their nature and to leave such matters to the regulation and control of local authorities. Under this section what is commonly known as county roads are left to the exclusive control of the courts of the county under general laws. That the Constitution forbids interference by the Legislature in the matter of opening, altering, vacating, or changing such local roads cannot be questioned, and the wisdom of the prohibition against legislative intermeddling in these or other matters purely local cannot be denied.

While we would be unwilling to adopt any construction of this section that would abridge its express meaning or hinder it from operating in such a way as to fully effectuate its purpose, yet we are equally averse to adopting any construction that would unduly narrow and restrict its manifest literal import.

While the act does relate to a short stretch of road in one county, it is not such a road as was in the mind of the framers of the Constitution. It is not purely local in its nature nor a matter of mere neighborhood concern, but is made and becomes an integral part in a comprehensive system of primary highways, constructed, owned, and maintained by the state. Though of comparatively recent origin and unknown at the time of the adoption of the present Constitution, this system of highway construction has become universal in progressive states, and is as firmly established as any of the functions or institutions of government. Under this system our state has expended millions of dollars in the construction of highways over routes established by acts in all material respects similar to the one under consideration, and this without question as to their validity.

If there were such doubt as to the validity of the act because of the prohibition in subsections 16 and 29 of section 59, as to ever have justified the narrow and doubtful construction contended for, the rule of contemporaneous construction would discourage, if not forbid, such construction now. However, we entertain no such doubt, and unhesitatingly hold that the act does not violate any part of section 59.

Applying the quoted part of the opinion rendered when the first case was here on motion for injunction, which we now adopt and reaffirm, it is apparent that the chancellor did not err in dismissing the petitions and denying the relief sought.

Judgment affirmed.

Whole court sitting, except Richardson, J.