## State Highway Commission v. Smith.

(Decided June 23, 1933.)

BAILEY P. WOOTTON, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellant.

FAUREST & FAUREST for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

This case presents the question whether the state highway commission has the authority under present laws to establish and operate permanently a free ferry. It is also submitted that if the commission has such authority generally, it may not do so within one mile of an existing ferry, under the limitations of section 1820 of the Statutes.

As a permanent part of the highway between Glasgow and Albany, the commission was proceeding to establish and maintain a ferry across Cumberland river near Burkesville in lieu of a bridge at that point. It was necessary to do this or build a bridge as a condition precedent to obtaining aid from the federal government in the construction of the road, and an agreement was made with the road department of the United States to that effect. The commission had purchased and placed a boat in operation and was carrying traffic free of tolls at a point slightly less than one mile of the ferry owned and operated by the appellee. The appeal seeks to vacate a judgment in the suit of the appellee enjoining the state highway commission from operating the ferry and proceeding with its purpose to maintain it. The road on either side of the river continues several miles wholly within the state, so the question before us is not affected by any restriction on interstate traffic.

In all of the various acts establishing and re-establishing the state highway commission or department, it has ever been expressly provided that it shall be the duty of such commission or department to cause to be done all things necessary to construct and maintain a system of primary roads designated as such by statute and that where there is no provision of law covering any necessary thing to be done in the construction and maintenance of such roads, the commission shall do such necessary things in the way and manner best calculated in its judgment to accomplish the necessary object. These acts further specifically provide that their provisions shall not be treated as restrictions on the power of the state highway commission or department save as expressly stated or clearly implied and that it is intended that such commission or department may do all things necessary in the construction and maintenance of the said roads except where the power to act is expressly or by clear implication denied or re-

stricted by law. See section 4356t-3, Kentucky Statutes, 1930 Edition, and section 4356t-3f, 1933 Supplement. Further, all of these acts specifically authorize and empower the state highway commission or department to enter into all contracts and agreements with the United States government relating to the survey, construction, and maintenance of roads under the provisions of the Act of Congress, approved July 11, 1916, and popularly known as the ''Federal Aid Act'' (39 Stat. 355), and to submit a scheme or program of construction and maintenance as may be required by the Secretary of Agriculture of the United States, or any other officer who may be designated by Congress and to do all other things necessary fully to carry out the co-operation contemplated or that may hereafter be contemplated and provided for by said federal act. See section 4356t-3 of the 1930 Edition of the Statutes, and section 4356t-3f of the 1933 Supplement. The broad powers which the Legislature has expressly delegated to the highway commission in the construction and maintenance of the state highway projects would seem sufficient independently of its power in respect to contracting with the federal government. It has all power except where expressly or by clear implication denied in determining as to how a state highway project is to be constructed and maintained. Of course, such highways must be carried across streams. The usual method is by a bridge. Though the department is given express authority to build bridges and tunnels and no mention of ferries is made, it does not follow that because ferries are not expressly mentioned, the highway department has no authority to adopt that method to carry a highway across a stream, because the act creating the department expressly says that it has all power to determine how a highway shall be constructed and maintained unless such power be expressly or by clear implication denied, and there is no such denial of the power to operate a ferry as a method of getting a state highway across a stream. This leads to the question whether a ferry is a proper method of getting a state highway across a stream and whether its operation comes fairly within so broad a power as the commission has to construct and maintain a highway.

In 25 C. J., pages 1048 and 1049, a ferry is defined as follows:

"A ferry is a liberty to have a boat upon a stream, river, arm of the sea, lake or other body of water, for the transportation of men, horses, and vehicles with their contents, for a reasonable toll. The term is also used to designate the place where the right is exercised, and sometimes is limited to the landing place. Ferries are frequently referred to or regarded as public highways, being continuations of the highways with which they connect, and serving the purpose of a bridge where a bridge is impractical."

In the footnote of the foregoing text on page 1049, it is said that:

"A ferry is a continuation of the highway from one side of the water over which it passes to the other, and is for transportation of passengers or of travelers with their teams and vehicles and such other property as they may carry or have with them. * * * Merely the continuance of a road across a river. It is only a substitute for a bridge. * * * A ferry has been aptly called a public highway across a stream of water by boat, instead of by bridge. * * * As the bridge is made for the road, not the road for the bridge, so is the ferry made for the road, not the road for the ferry; the ferry is the incident, the road is the principal. * * * A public ferry being merely a party of the highway, a county may establish such ferries in the absence of statutory authority."

In the case of Reid v. Lincoln County, 46 Mont. 31, 125 P. 429, 437, decided by the Supreme Court of Montana, the right of a county to establish and operate a free ferry by the expenditure of county road bond proceeds was involved. It was argued that the county did not have authority to establish or operate a ferry or to expend any of the bond proceeds for that purpose. The court held that a public ferry, being merely a part of the highway, the county had the right to establish such ferry even in the absence of special statutory authority. The court said:

"The construction of a ferry is, ordinarily, a matter of relatively small expense. Unlike an expensive bridge across a river like the Kootenai, it may, we think, well be considered as a mere detail or in-

cident of the highway. It seems to us it may be presumed that the people would unhesitatingly intrust to the board of county commissioners so relatively unimportant a detail as the selection of sites for ferries and the manner of construction thereof. A 'ferry' is simply a movable portion of a highway where it crosses a stream. * * * It is contended that the county of Lincoln had no authority to issue bonds for the purpose of establishing free ferries. We have already held that, for the purposes of this action, a ferry is to be construed as a part of the highway and a necessary incident to the general plan. We regard the fact as altogether immaterial that express statutory authority to establish free public ferries was not given by the Legislature until the year 1909.''

In McQuillan Municipal Corporations (2d Ed.) Vol. 1, sec. 418, a ferry is defined as follows:

''A ferry as defined in the early English law is a liberty by prescription of the King's grant for a boat for passage on a stream for the carrying of horses and men for reasonable toll. It is said to be 'a liberty to have a boat upon a river for the transportation of men, horses and carriages with their contents for a reasonable toll.' A ferry may be regarded as a continuance of a public highway from one side of the water over which it passes to the other. In this sense it is a substitute for a bridge and its end and use is the same.''

In the case of Brown v. Given, 4 J. J. Marsh. (27 Ky.) 28, this court in an opinion by Chief Justice Robertson held that:

''A ferry is a public highway, and is established more for the public good, than for the individual advantage of the grantee. The interest of 'the people,' must, therefore, control and predominate over that of an individual.''

In the case of Warner v. Ford Lumber & Mfg. Co., 123 Ky. 103, 111, 93 S. W. 650, 651, 29 Ky. Law Rep. 527, 12 L. R. A. (N. S.) 667, it was held by Judge Settle, writing for this court, that:

''A ferry is a public, rather than a private right, and has been aptly called a public highway across

a stream of water by boat, instead of by bridge.''

In the case of Sullivan v. Board of Supervisors, 58 Miss. 790, 799, the Supreme Court of Mississippi said:

"Where a stream crosses a public highway, the continuity of the highway is not broken; it does not end on one side of the stream and begin again on the other, but continues across the stream, and the public, for the purposes of travel, have the same right to go on the water over the highway that they have to pass along any other portion of it; but, as a physical obstruction intervenes, it is necessary that some convenient means of transportation shall be furnished, and the simplest and most economical in many cases is by ferry.''

In the case of State v. Weithaupt, 231 Mo. 449, 133 S. W. 329, the Supreme Court of Missouri reviewed authorities defining a ferry as a part of a public highway and as a continuation of the highway from one side of the water over which it passes to the other. The court held that the ferry is a necessary incident to the use of the highway and constitutes a part of it.

In the case of Tallevast v. Kaminski, 146 S. C. 225, 143 S. E. 796, it was held that the county commissioners, being invested by statutes with power to establish and maintain a system of highways, as an incident to that power, had authority, independently of express statute, to install ferries and ferry routes and to build necessary abutments, wharfs, and connecting roads.

In the case of Fairchild v. Union Ferry Company, 121 Misc. 513, 201 N. Y. S. 295, 299, the Supreme Court of New York held that the city of New York not only had the right to maintain ferries but that it was under the duty of so doing, "the ferries being deemed a continuation of the highways.'' See, also, Burrows v. Gonzales County, 5 Tex. Civ. App. 232, 23 S. W. 829; Montgomery v. Multnomah Railway Co., 11 Or. 344, 3 P. 435; Poultnot v. Cantwell, 129 S. C. 171, 123 S. E. 651; also the note in 59 L. R. A. 513.

It thus seems clear that a ferry is as much a part of a highway as a bridge or culvert or surfaced roadway and the all-inclusive power granted the highway department as to how highway projects are to be constructed and maintained carries with it the right to op-

erate permanently a free ferry to carry a state highway project across a stream.

Emphasizing the existence of this power is the authority given to make any contract with the federal government necessary to procure federal aid in the construction of a state highway project. This means that the highway department may contract to do that which the federal government requires as a condition precedent to federal aid, at least unless that power be withheld from the highway department expressly or by clear implication; and at least so far as the operation of a ferry is concerned, there is no such withholding in this case. The record discloses that the ferry here in question carries the state highway project from Albany to Glasgow via Burkesville over the Cumberland river, and that the highway department contracted with the federal government to procure the federal aid it did in the construction of this project to maintain the free ferry here in question until a free bridge be built, the federal government insisting on such a provision as a sine qua non to federal aid.

Thus the court concludes that the highway commission has the power generally to operate permanently a free ferry to carry a state highway project over an intervening stream and at least had the power to operate such a ferry under its contract with the federal government in this case.

But may it operate that ferry within the competitive distance set out in section 1820 of the Statutes? Conceding the franchise character of a ferry privilege, the application of section 3 of the Constitution may be regarded since the ferry franchise under which the appellee operates was granted in 1930. That section reads:

"All men, when they form a social compact, are equal; and no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services; but no property shall be exempt from taxation except as provided in this Constitution; and every grant of a franchise, privilege or exemption, shall remain subject to revocation, alteration or amendment."

In taking her ferry franchise in 1930, the appellee

took it, of course, subject to this provision of the Constitution.

The provisions of section 1820 of the Statutes, in so far as they provide against another ferry being operated within the distance prescribed, are in the nature of a police regulation. It was expressly on this theory that the case of Tri-State Ferry Co. v. Birney, 235 Ky. 540, 31 S. W. (2d) 932, was decided. Being such, they are at least subject to alteration or amendment especially when the power to alter or amend is reserved as it is here by section 3 of the Constitution. Further, being a police regulation, under familiar principles, they are not to be construed in derogation of the sovereign's right to itself invade the competitive limit if it chooses to do so. They do not operate against the sovereign.

In Fanning v. Gregoire, 16 How. (U. S.) 524, 533, 14 L. Ed. 1043, the Supreme Court of the United States had under consideration an act of the Legislature of the then territory of Iowa, enacted in 1838, which authorized Fanning to establish a ferry across the Mississippi river, at Dubuque, for a term of twenty years, and which act further provided that no court or board of county commissioners should authorize any person to keep, or operate, a ferry within the limits of the city of Dubuque for the term of the franchise. In 1847, following the admission of the territory of Iowa to statehood, the Legislature incorporated the city of Dubuque, and provided that the "city council shall have power to license and establish ferries across the Mississippi from said city to the opposite shore, and to fix the rates of same." In pursuance of the charter, the city council granted a permit to one Gregoire to operate a ferry within the city limits of Dubuque for a term of six years. Fanning claimed this action violated his franchise granted by the territorial Legislature in 1838. The principal question in the case was whether the right thus granted to Fanning was exclusive as against the power of the state subsequently to authorize a municipal corporation to grant ferry franchises within the competitive limits defined in Fanning's franchise. The Supreme Court of the United States held the franchise was not exclusive as against the state of Iowa. Mr. Justice McLean said:

"The prohibition on the court and the board

of county commissioners to grant a license for another ferry, it is urged, would seem to show an intent to make the grant exclusive. And that the reason for this might be found in the alleged fact, that when the ferry was first established, a considerable expenditure was required, and little or no profit was realized for some years. But all the judges present except one held that the grant was not intended to be exclusive. In their opinion this view is sustained by the consideration that, although the county court and county commissioners were prohibited from granting another license at Dubuque, yet this prohibition did not apply to the legislature; and as it had the power to authorize another ferry, the general authority to the council to 'license and establish ferries across the Mississippi river at the city,' enabled the corporation, in the exercise of its discretion, to grant a license, as the legislature might have done.

"This power was clearly given to the city, and it may be exercised, unless the grant of Fanning be exclusive.

"The board of commissioners has been established, and the legislature has substituted in its place, for the purpose of licensing ferries at Dubuque, the city council, and it is contended that this change of the power ought not to affect the rights of the plaintiff. The restriction on the commissioners of the county does not apply, in terms, to the city council; and the court think it cannot be made to apply by implication. The license to Gregoire was granted thirteen years after the grant to the plaintiff. And it may well be presumed, from the increase of the city at Dubuque, and the great increase of the line of trade through it, that additional ferry privileges were wanted. Of this the granting power was the proper judge.

"The exclusive right set up must be clearly expressed or necessarily inferred, and the court think, that neither the one nor the other is found in the grant of the plaintiff, nor in the circumstances connected with it."

In Williams v. Wingo, 177 U. S. 601, 20 S. Ct. 793, 794, 44 L. Ed. 905, the Supreme Court construed a

statute of Virginia conferring upon county courts jurisdiction to grant ferry franchises and providing that it should be unlawful to grant any other franchise over the same water course within a distance of one-half mile. The court, in an opinion by Mr. Justice Brewer, said:

"The act of 1840 was one of general legislation, and subject to repeal by the general assembly. No rights could be created under that statute beyond its terms, and by it no restraint was placed upon legislative action. When the general assembly gave to the county courts power to license ferries it by that act in effect forbade them to establish a second ferry within half a mile of one already established, but that bound only the county court. It did not tie the hands of the legislature, or prevent it from authorizing another ferry within a half mile whenever in its judgment it saw fit. A contract binding the state is only created by clear language, and is not to be extended by implication beyond the terms of the statute."

In the case of Snidow v. Board of Supervisors of Giles County, 123 Va. 578, 96 S. E. 810, 814, the Supreme Court of Appeals of Virginia, in discussing and passing on the question involved in the case at bar, held that:

"* * * There is, however, an important distinction which must be borne in mind, which underlies the authorities on the subject in a controlling way, but which is seldom referred to therein in express terms. That distinction is that a franchise may be granted as exclusive as against some persons and not as against others; that is to say, a franchise may be, and most often is, granted as exclusive as against all persons other than the sovereign granting it, but not as exclusive in the sense that the sovereign may not itself subsequently exercise or grant to another the right to exercise the same or a similar franchise so near the same locality occupied by that first granted as to interfere with, and perhaps wholly to destroy, the income enjoyed by the latter from such prior franchise and the investment of capital therein. Consequently there is a most important and fundamental difference between the rights of holders of

franchises in controversies with rival operations, where the latter are not authorized by legislative authority, from the cases where the rival operations are so authorized."

It has been held that the Legislature has expressly delegated to the state highway commission a broad discretion in locating a state highway project between terminal points, which discretion is not fettered unless the act creating the project itself provides that the route shall go through certain intermediate points, in which event those intermediate points must be gone through. Smith v. State Highway Commission, 247 Ky. 816, 57 S. W. (2d) 1014. The highway commission having the power to carry a state highway over a stream by means of a ferry operated by it, and having a broad discretion in the routing of a highway between terminal points, it follows that the Legislature authorized it to invade the competitive limits set up in section 1820 of the Statutes if the commission deemed it expedient so to do. This the Legislature had a right to do. And especially did the commission have this right under the power vested in it to contract, as it did, with the federal government in order to procure federal aid.

For these reasons the court is of the opinion that the injunction asked by the appellee restraining the highway commission from proceeding with the operation of the ferry should have been denied. The judgment is accordingly reversed.

Whole court sitting.

Rees, C. J., and Clay, J., dissent.