162 A.2d 185 (1960)
Frank J. TUSSO and Dorothy H. Tusso, on behalf of themselves and others similarly situated, Plaintiffs,
v.
J. Gordon SMITH, Benjamin F. Shaw, II, Benjamin Abelman, Thurman G. Adams, J. Draper Brown, Dallas D. Culver, Samuel J. Fox, Frank R. Grier, Edward Kelly, William P. Richardson, Hugh R. Sharp, Jr. and Robert D. Thompson, constituting the State Highway Department of the State of Delaware, and Richard A. Haber, Chief Engineer, and The Mayor and Council of Wilmington, a municipal corporation of the State of Delaware, Defendants.
Supreme Court of Delaware.
June 9, 1960.
Thomas Herlihy, Jr., and Hiram W. Warder, Wilmington, for plaintiffs.
S. Samuel Arsht, Harvey S. Kronfeld and Richard H. Allen, of Morris, Nichols, Arsht & Tunnell, Wilmington, for State Highway Department.
SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.
WOLCOTT, Justice.
This is an appeal from a judgment entered in the Court of Chancery of New Castle County upholding the action of the *186 State Highway Department pursuant to 17 Del.C. §§ 171-180 in acquiring the right-of-way for a limited access highway through the City of Wilmington. This project was before us earlier in Piekarski v. Smith, Del., 153 A.2d 587, to which reference is made for factual background. We upheld in that case the action of the State Highway Department. The instant case, however, raises additional questions.
The appellants are real estate owners in the City of Wilmington. Their property is located within the proposed right-of-way to be acquired. They resist the acquisition of their property by the Highway Department.
Appellants make several arguments to reverse the judgment of the Vice-Chancellor, but only one of them need be considered by us. The others will stand or fall with the answer to the first argument.
Appellants urge upon us that 17 Del.C. §§ 171-180 is unconstitutional since it is restricted in its operation to New Castle County. The argument is founded upon Article II, § 19 of the Delaware Constitution, Del.C.Ann. which reads as follows:
"The General Assembly shall not pass any local or special law relating to fences; the straying of live stock; ditches; the creation or changing the boundaries of school districts; or the laying out, opening, alteration, maintenance or vacation, in whole or in part of any road, highway, street, lane or alley; provided, however, that the General Assembly may by a vote of two-thirds of all the members elected to each House pass laws relating to the laying out, opening, alteration or maintenance of any road or highway which forms a continuous road or highway extending through at least a portion of the three counties of the State."
Appellants point out that the referred-to sections of the Code when enacted did not receive an affirmative vote of "two-thirds of all the members elected to each House" of the General Assembly. Upon this fact, conceded by the Highway Department, the argument is constructed. The argument, of course, is based upon the premise that 17 Del.C. §§ 171-180 is a local law within the meaning of Article II, § 19 of the Constitution. If the statute is not a local or special law, the basis for the contention is non-existent.
In Wright v. Husbands, Del., 131 A.2d 322, 333, we held that the meaning of Article II, § 19 was to be fixed by the purpose for which it was included in the Constitution of 1897 and turned to the Debates in the Convention in order to arrive at the meaning of the section. We refer to the opinion in Wright v. Husbands for the full discussion of the portions of the Debates clarifying the meaning of the section.
It is sufficient in this appeal to state the conclusion we reached in Wright v. Husbands. It was clear to us then, and is equally clear to us now, that Article II, § 19 is designed to prevent a specific evil which had grown up in legislative practice prior to the adoption of the Constitution of 1897. That evil was the flood of bills introduced in each session of the General Assembly relating to specific and entirely local physical changes in roads and streets, concerning which the General Assembly as a whole had no knowledge, and which were more properly left to the discretion of local governing bodies for solution. We summed up our construction of Article II, § 19 in the following language:
"Therefore, considering the constitutional provision in the light of the circumstances which led to its adoption, and the evil it was designed to prevent, we are of the opinion that Article II, § 19 prohibits only the enactment of special laws relating to physical changes in streets and roads."
Applying, therefore, this meaning of Article II, § 19 to the appeal before us, let us see whether or not 17 Del.C. §§ 171-180 is a local or special law.
*187 This proposed limited access highway is, in fact, a connecting link of the National Interstate and Defense Highway System and at the same time an integral part of the Delaware State Highway System. This is true, even though the actual physical layout of the highway is wholly confined within New Castle County. This highway when constructed will connect the Delaware Memorial Bridge crossing the Delaware River to a highway intersecting at the Delaware-Pennsylvania border, will traverse Wilmington, and ultimately will connect with highways leading into Delaware from Maryland.
The contemplated system of which this proposed limited access road will be a part, in fact, is a network of controlled access highways which will be, probably, the most heavily traveled components of the State Highway System. It is, therefore, not solely a matter of local concern in the sense that the residents of the locality through which it will actually pass are the only ones interested in its construction or, conversely, in its prevention.
Since, in our opinion, Article II, § 19 was intended to prohibit only legislation directing the physical laying out, altering, or vacating of roads and streets of a purely local character in which only the particular locality was interested or concerned, we think it has no application to a statute of the type of 17 Del.C. §§ 171-180 which is designed to permit the construction of a necessary link in a state system of highways over which flows a heavy volume of interstate vehicular traffic.
It, therefore, appears that the major premise of appellants' argument is non-existent, and it is thus immaterial that the enactment of this statute was not by the affirmative vote of a two-thirds majority in both Houses of the General Assembly.
Our conclusion in this respect finds support in other jurisdictions almost without exception. Cf. Smith v. State Highway Commission, 247 Ky. 816, 57 S.W.2d 1014; Application of Oklahoma Turnpike Authorities, 203 Okl. 335, 221 P.2d 795; State Highway Com'r v. Chambersburg & Bedford Turnpike Road Co., 242 Pa. 171, 88 A. 938; Henderson v. Delaware River Joint Toll Bridge Comm., 362 Pa. 475, 66 A.2d 843, and, see also, 82 C.J.S. Statutes, § 200 and 2 Sutherland, Statutory Construction (3rd Ed.), § 2114.
In opposition, appellants cite only Smith v. Baltimore & O. R. Co., 7 Terry 441, 85 A.2d 73, in which a statute of the General Assembly was held unconstitutional as a violation of Article II, § 19. That statute directed the defendant Railway Company to increase the capacity of an overhead bridge carrying a public highway over the railway right-of-way. It was held that the act in question had aspects both of a local and a special law and, having failed to pass both Houses of the General Assembly by an affirmative two-thirds majority, was invalid.
We have no doubt as to the soundness of the result in the Smith case since, obviously, a law requiring the enlargement of a small bridge is purely local in character. Furthermore, it would seem to us that even though the act in question had received a two-thirds majority of both Houses, there would still have been a grave question of the act's constitutionality in view of the doubt that a small bridge of this character could satisfy the requirement of a road passing through at least a portion of all three counties of the state. However, we think the case is of no help to the appellants.
A further subsidiary point must be considered. This is an argument that the limiting of the authority conferred by 17 Del. C. §§ 171-180 to New Castle County is an arbitrary classification and thus invalid.
In passing upon a classification made by the General Assembly, courts will not assume to substitute their judgment as to what is reasonable and proper but, on the contrary, will validate the classification *188 if the action of the Legislature can be regarded as reasonable and proper without doing violence to common sense. Conard v. State, 2 Terry 107, 16 A.2d 121; see, also, Aetna Casualty & Surety Co. v. Smith, Del., 131 A.2d 168.
The limiting of the limited access highway authority to New Castle County does not seem unreasonable or capricious to us. New Castle County lies athwart the major roads between the northeastern section of the United States and the South. The heavy vehicular traffic passing between these two sections demands in the light of modern conditions super highways to facilitate travel for commercial and national defense purposes. A classification based upon these facts must be held to be reasonable. Cf. Barton v. Public Service Comm. of Maryland, 214 Md. 359, 135 A. 2d 442.
We thus answer the basic question of this appeal to the effect that the statute in question is not violative of Article II, § 19 of the Constitution, and that the limitation of its authority to New Castle County is neither arbitrary nor capricious. The act is, therefore, constitutional and valid.
This holding makes it unnecessary for us to consider other subsidiary questions raised both by the appellants and the appellees. In order to avoid possible future misunderstanding of the scope of this opinion, however, we state that our holding of constitutionality of 17 Del.C. §§ 171-180 is not an implicit acceptance of appellants' subsidiary argument that 17 Del.C. § 175 necessarily overrules our decision in State ex rel. Sharp v. 0.62033 Acres of Land in Christiana Hundred, 10 Terry 90, 110 A.2d 1 if its constitutionality is upheld. The referred-to section, § 175, on its face authorizes the Highway Department to acquire land not immediately needed for the right-of-way proper. We decline to express an opinion, one way or the other, as to whether § 175 confers authority to condemn for purposes proscribed by our former decision for the reason that this record does not present the question.
For the foregoing reasons, the judgment of the Vice-Chancellor is affirmed.